**NORTHWEST AIRLINES, INC.,**
**Plaintiff,**

v.

**ALASKA AIRLINES, INC., Defendant.**
**Civ. No. A–103–69.**

United States District Court,
D. Alaska.

April 14, 1972.

---

7. A.M.E. Disc. 333.

8. A.M.E. Disc. 335.

9. A.M.E. Disc. 417.

10. A.M.E. Disc. 423–429.

Burr, Pease & Kurtz, Anchorage, Alaska, for defendant.

Faulkner, Banfield, Boochever & Doogan, Juneau, Alaska, for plaintiff.

## MEMORANDUM OF DECISION AND ORDER

PLUMMER, Chief Judge.

This case comes before the court on cross motions for summary judgment. The motions arise from a 1961 crash of an Alaska Airlines plane on the Shemya Airfield which, at the time, was under the control of Northwest Airlines. In 1959, Alaska and Northwest entered into the following indemnity agreement:

"4. Alaska agrees to hold harmless and indemnify Northwest, its officers, agents, contractors, servants and employees from all claims and liabilities for damage to, loss of, or destruction of any property of Alaska, its officers, agents, servants, and employees, and the property of any other person or persons, and for injuries to or death of any person or persons which may now or hereafter arise out of or be in any way connected with the service and facilities furnished to Alaska under this agreement."

The personal representatives of those who died in the crash sued Northwest for wrongful death and Alaska sued Northwest for damage to the aircraft on grounds that the negligence of Northwest was the sole proximate cause of the crash. Northwest then sued Alaska seeking a declaratory judgment that Northwest was not liable to Alaska because of the indemnity agreement, and that Alaska was obligated to defend and hold Northwest harmless from the wrongful death actions. This court in 228 F.Supp. 322 (1964) held that the indemnity agreement was ineffective to release Northwest from the consequences of its own negligence on the basis of public policy reasons. The decision was affirmed in Northwest Airlines, Inc. v. Alaska Airlines, Inc., 351 F.2d 253 (9th Cir. 1965), and the language therein is relied upon by both sides in the motions presently before the court.

The case of Alaska Airlines v. Northwest Airlines, No. J–4–63, was concluded on January 4, 1969. That decision held that Alaska had failed to prove by a preponderance of the evidence that the crash and damages sustained were the direct result of Northwest's negligence or misconduct. This decision was affirmed in Alaska Airlines, Inc. v. Northwest Airlines, Inc., 444 F.2d 84 (9th Cir. 1971).

In 1969, Northwest settled the wrongful death actions after Alaska refused to defend on grounds of its nonliability and the unenforceability of the indemnity clause. Claims of approximately two to three million dollars were settled by Northwest for amounts in excess of four hundred thousand dollars.

The present case was commenced in the United States District Court for the Western District of Washington, and thereafter transferred to this district. Northwest's complaint seeks indemnity from Alaska pursuant to the indemnity agreement mentioned above, notwithstanding all previous litigation. Northwest denies its negligence as the proximate cause of the crash, and even if found negligent, Northwest alleges that its negligence was joint and concurrent, and also that Alaska's negligence was an intervening cause of the crash. Northwest's prayer is for the amount of settlement made by it in the wrongful death cases as well as attorneys' fees and costs for all previous litigation to which it was a party.

Alaska's answer essentially pleads that the decision in Northwest Airlines, Inc. v. Alaska Airlines, Inc., 351 F.2d 253 (9th Cir. 1965), in which the court upheld this court's findings that the indemnity agreement was unenforceable, amounts to a final adjudication—res judicata and collateral estoppel—of the validity of the agreement.

This controversy seems to turn upon one issue—the validity of the indemnity agreement with regard to all the facts resulting from all previous litigation. Without the existence or validity of the indemnity agreement as evidence of any obligation of Alaska to Northwest, Northwest's action fails for lack of substance at least at this point in the litigation. Both sides seek a decision that the Ninth Circuit in 351 F.2d 253 held in their favor concerning the case now before the court. In its decision at page 258, the court stated:

"If, in the orderly course of litigation, it is determined that negligence, if any, on the part of 'Northwest' was not a proximate cause of the disaster, the indemnity provision may afford an avenue by which it may gain some relief from 'Alaska'. And it is, of course, not to be implied that 'Northwest' is, by this opinion, deprived of any established defenses which Alaskan law affords in actions based upon alleged negligence, nor is it divested of rights of contribution or indemnity which it may have under proper application of general law. We hold only that the exculpatory and indemnity provision, insofar as it is sought to be enforced to spare 'Northwest' from liability for its own negligence, being against public policy and invalid, is unenforceable."

By the explicit wording above, it is clear that the court was precluding Northwest's reliance on the indemnity provision until the fault or cause of the accident was determined. Since the cause of the accident has now been determined not to be due to the negligence of Northwest, the court may give effect to the indemnity agreement and hold Alaska liable for indemnification.

Alaska's contentions must stand or fall on the validity of the indemnity agreement. Without such agreement, Alaska's argument is logical and probably legally correct. The indemnity agreement's existence and validity is fatal to Alaska's contentions that the Alaska Workmen's Compensation Act, AS 23.30.055, regarding the liability of an employer for a tort action by the employee, precludes indemnity by Northwest. United Airlines, Inc. v. Wiener,

335 F.2d 379, 403 (9th Cir. 1964), states as follows:

"As pointed out in the Weyerhaeuser opinion [Weyerhaeuser S. S. Co. v. United States] 372 U.S. [597] 602, 83 S.Ct. 926 [10 L.Ed.2d 1], the exclusive liability provision of the Federal Employees' Compensation Act is indistinguishable from Section 5 of the Longshoremen's and Harbor Worker's Act, 33 U.S.C. § 905.[39] In construing this statute the courts have held that an employer may be liable for indemnity to another on the basis of an express or implied contract of indemnity but that in the absence of a contractual duty, the exclusive liability provision removed the underlying liability necessary for indemnity." (Citations omitted)

The *Wiener* holding is based upon the holding in Weyerhaeuser S. S. Co. v. United States, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1, in which the following language is found:

"Section 5 of the Longshoremen's and Harbor Workers' Compensation Act is nearly identical to § 7(b) of the Federal Employees' Compensation Act in providing that '[t]he liability of an employer . . . shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . .' In Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, it was held that despite this exclusive liability provision, a shipowner was entitled to reimbursement from a longshoreman's employer for damages recovered against the shipowner by the longshoreman injured by the employer's negligence. The Court's decision in *Ryan* was based upon the existence of a contractual relationship between the shipowner and the employer. In a series of subsequent cases, the same result was reached, although the contractual relationship was considerably more attenuated." (Citations omitted).

"In the present case there was no contractual relationship between the United States and the petitioner, governing their correlative rights and duties. There is involved here, instead, a rule of admiralty law which, for more than 100 years, has governed with at least equal clarity the correlative rights and duties of two shipowners whose vessels have been involved in a collision in which both were at fault."

The existence and validity of the indemnity agreement precludes reliance on the Workmen's Compensation Act by Alaska for its contention of nonliability to its employees' settlement claims with Northwest.

■ Alaska's contention that the settlements by Northwest were voluntary for which Northwest has no right of indemnity is based in part on the Workmen's Compensation argument above. The latest ruling on this issue appears in the Missouri Pacific Railroad Co. v. Arkansas Oak Flooring Co., 434 F.2d 575 (8th Cir. 1970):

"Appellant contends that the district court also erred in excluding evidence bearing on the likelihood that Missouri Pacific could have successfully defended a suit by the brakeman. Appellant asserts that such evidence is required for a proper determination of the reasonableness of the amount paid by Missouri Pacific in settlement of the brakeman's claim. We find this contention to be without merit. In seeking indemnity, the indemnitee need not prove its legal liability to the injured party when its indemnitor denies liability under a contract and refuses to assume defense of the claim or to otherwise hold the indemnitee harmless for any loss. . . . Here, the record clearly shows potential liability of Missouri Pacific as a matter of law. The jury specifically found that Missouri Pacific made a good

faith settlement of its potential liability. We deem this finding sufficient on the liability issue." (Citations omitted).

At the time the settlements were made, Alaska had declined to defend the settlement actions so Northwest made an exceptionally prudent settlement of all its claims in view of Northwest's potential liability for the accident.

■ Alaska contends that any negligence on Northwest's part precludes indemnification since it would be contrary to public policy as per the declaratory judgment decision, 228 F.Supp. 322, affirmed 351 F.2d 253, to allow one controlling a public facility to absolve himself from the consequences of his own negligence, regardless of degree, by an agreement of indemnity.

This contention cannot stand in absence of proof of Northwest's negligence. Assuming, hypothetically, that Northwest were found negligent in a degree failing to constitute the proximate cause of the accident, Northwest could recover under the indemnity agreement pursuant to the holding in the declaratory judgment actions since the sole negligence of Northwest was held not to be the cause of the accident. The cause of the accident not being attributable to Northwest, then Alaska must be held for its own degree of negligence as the proximate cause of the accident. The declaratory judgment decision leads to the conclusion that a condition precedent to Northwest's recovery on the indemnity agreement is proof that its sole negligence was not the proximate cause of the crash. Such proof is found in the decision in the case of Alaska Airlines v. Northwest Airlines, No. J–4–63, United States District Court for the District of Alaska, 1969, and in the opinion affirming that decision (444 F.2d 84).

■ With reference to the recovery of attorneys' fees and costs, the following cases appear controlling in favor of such recovery: Southern Arizona York Refrigeration Co. v. Bush Mfg. Co., 331

F.2d 1 (9th Cir. 1964), and Guidry v. Texaco, Inc., 430 F.2d 781 (5th Cir. 1970).

The *Guidry* case, *supra,* p. 785, held as follows in a situation in which indemnity was allowed:

"Only the issue of attorneys' fees and expenses remains. Although the district court awarded Texaco indemnity from Gulf copper for all amounts it was required to pay Guidry, it declined to award attorneys' fees and expenses. This we think was error. If Texaco was entitled to be indemnified by Gulf Copper, and we have held that it was, it was equally entitled to reimbursement for such reasonable attorneys' fees and expenses as it incurred in defending the claim asserted by Guidry in the trial and on this appeal. Lusich v. Bloomfield S. S. Co., 355 F. 2d 770 (5th Cir. 1966)."

In *Southern Arizona, supra,* 331 F.2d at p. 6, the following statement appears:

"Defendant's contention that the District Court lacked jurisdiction of the cause because in this diversity suit the judgment recovered by Swift and Company was less than the sum of $10,000.00 is without merit. Plaintiffs seek to recover not only the amount of judgment in the sum of $9,175.29, the amount paid in satisfaction of the Swift and Company judgment, but also attorney's fees and expenses paid out in defense of the law suit and appeals relating thereto in the amount of $5,060.12. We believe that an indemnitee is entitled to recover against the indemnitor the costs and expenses incurred in defending the suit, in instances where the indemnitor has knowledge of the legal proceedings against the indemnitee and refuses to defend. In the instant case plaintiffs' cause of action was within the jurisdiction of the District Court."

The court finds that there is no genuine issue as to any material fact and that Northwest is entitled to judgment

as a matter of law. The court further finds that Northwest is entitled to recover costs and attorneys' fees including those incurred in the settlement cases for which it seeks indemnity.