568 F.Supp. 1323 (1983)
INDUSTRIAL RISK INSURERS, an unin-corporated association, American International Reinsurance Company, Ltd., a citizen of a foreign state, and the Ancon Insurance Company, S.A., a citizen of a foreign state, Plaintiffs,
v.
CREOLE PRODUCTION SERVICES, INC., a Delaware corporation, Defendant.
HARBOR INSURANCE COMPANY, Third-Party Plaintiff,
v.
FLUOR CORPORATION, a Delaware corporation, Fluor Alaska, Inc., and Fluor Engineers and Constructors, Inc., its wholly owned subsidiaries, Third-Party Defendants.
No. A79-199 CIV.
United States District Court, D. Alaska, Anchorage Division.
June 24, 1983.
*1324 John A. Treptow, Atkinson, Conway, Bell & Gagnon, Karen L. Hunt, Anchorage, Alaska, for plaintiffs.
Henry J. Camarot, Camarot, Samdberg & Hunter, Anchorage, Alaska, for third-party defendants.

MEMORANDUM AND ORDER
VON DER HEYDT, District Judge.
THIS CAUSE comes before the court on the motion of Fluor Corporation, Fluor Alaska, Inc., and Fluor Engineers and Constructors, Inc. (Fluor) for summary judgment dismissing third-party plaintiff Harbor Insurance Co.'s claims. Jurisdiction is based on diversity of citizenship. As a preliminary matter, the court also disposes of Fluor's appeal from a magistrate's determination granting in part Harbor's motion to strike.

*1325 I. APPEAL OF MAGISTRATE'S RULING
Fluor appealed a ruling which struck from the record that portion of Mr. E.L. Patton's affidavit addressing the intent of paragraph F, amendment 6 to the contract between Alyeska and Fluor, Transalaska Pipeline System Agreement 357 (TAPS 357).

a. Standard of Review
Determinations by the Magistrate of non-dispositive motions referred pursuant to 28 U.S.C. § 636(b)(1)(A) (1976) will not be reconsidered unless clearly erroneous or contrary to law. Id. After a review of the challenged affidavit, the magistrate's order and the briefs submitted, the court concludes that the magistrate's order was neither clearly erroneous nor contrary to law and affirms the order.
The acknowledgement by E.L. Patton that it was the intent of Paragraph F to completely release Fluor from liability as a result of the explosion and fire at Pump Station No. 8 puts forth only the "unilateral understanding" of Mr. Patton as to the meaning of the contract and, without reference to conduct or communication between the contracting parties, is conclusory. See Over the Road Drivers, Inc. v. Transport Ins. Co., 637 F.2d 816, 819 (1st Cir.1980). Even though the First Circuit in Over the Road apparently considered the affidavits before deeming them insufficient to resist summary judgment, it is clear that the court concluded that the affidavits did not satisfy the requirements of Fed.R.Civ.P. 56(e). See Id., 637 F.2d at 819. Having concluded that the challenged portions of the Patton affidavit fail to satisfy the requirements of 56(e), a motion to strike is also appropriate. See J. MOORE, Moore's Federal Practice ¶ 56.22[1] n. 56 (2d ed.1981) and cases cited therein.

II. MOTION FOR SUMMARY JUDGMENT
Summary judgment may be granted if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to the non-moving party, that there are no genuine issues of material fact and that the moving party is entitled to prevail as a matter of law. International Ladies Garment Workers Union v. Sureck, 681 F.2d 624, 629 (9th Cir.1982). The moving party has the burden of showing that no genuine issue of material facts exists. Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc., 637 F.2d 1376, 1381 (9th Cir.) cert. denied 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981). For the reasons set forth below, the court concludes that Fluor's motion should be granted.

a. Background
Oil began flowing through the Trans Alaska Pipeline System on July 2, 1977. On July 8, 1977 leaking crude oil from one of the two pumps of Pump Station No. 8 exploded and engulfed the area in flame. One life was lost. The Alyeska Pipeline Service Company (Alyeska) was paid over $5,000,000 by its group of insurers, collectively known as IRI. IRI sued Creole Production Services, Inc. (Creole), which company had contracted with Alyeska to be in charge of the start up of Alyeska's pump stations.[1] IRI's original complaint contained *1326 18 counts of negligence and also alleged that Creole was obligated to indemnify Alyeska and hold Alyeska harmless under its contract known as TAPS 3030.[2]
IRI amended its complaint by deleting the negligence claim, against which Creole had asserted comparative negligence in defense. The amended complaint relied solely on Creole's contractual obligation to hold Alyeska harmless. Creole also filed a third-party complaint against Fluor. Fluor had contracted with Alyeska to provide the detailed design of the pump stations and terminal facilities. See TAPS 357, Fluor's Motion for Summary Judgment, Ex. 2. The parties disagree radically over the extent of Fluor's contractual obligation and involvement in the design of the pump station. Although an obvious fact question, its resolution is not material to this motion.
IRI and Creole entered into a settlement agreement and Creole assigned its rights against Fluor to its insurer Harbor. Fluor previously moved to dismiss the Harbor complaint for failure to state a claim, inasmuch as IRI's complaint against Creole stated a claim in contract, while the third-party complaint was based on tort. In a June 3, 1981 memorandum the court concluded that Fluor might be liable in tort for damages to Creole arising from a recovery against Creole in contract and denied the motion.

b. Third-party Complaint
Creole's October 1, 1980 third-party complaint alleges in paragraph 4 that Fluor is liable to indemnify Creole for the entire amount of Creole's liability or pro rata on the basis of proportionate fault. Paragraph 6 alleges that Fluor expressly and impliedly warranted the safety of Pump Station 8 for intended and foreseeable purposes. Paragraph 7 alleges that Fluor was negligent in the design and manufacture of Pump Station 8, and as a result, the pump station was unreasonably dangerous. In its prayer, Creole requests judgment against Fluor for indemnity from all loss and pro rata allocation of any award in favor of plaintiff based on a finding of 100% fault in Fluor.
On November 8, 1982 Fluor filed a motion for an order granting summary judgment in its favor on the issue of liability. In effect, Fluor seeks a dismissal of the third-party complaint for the reason that the complaint, under any state of facts which may be proved, fails to state a claim upon which recovery from Fluor can be made.
Fluor's briefs have identified five potential theories of liability on the basis of the facts alleged in Harbor's complaint. Harbor's opposition to the motion for summary judgment does not attempt to assert other theories of liability running from Fluor to Harbor or its subrogee Creole and the court does not recognize additional theories available to Harbor on the facts alleged.
Briefly, the five broad theories of liability suggested by the facts alleged in Harbor's complaint are:
(1) Contribution by Fluor as a joint tort feasor with Harbor's subrogee Creole.
*1327 (2) Breach of warranty by Fluor in the design, production and installation of an unreasonably dangerous product.
(3) Partial indemnification in proportion to Fluor's percentage of fault.
(4) Indemnification implied from Fluor's alleged obligation to indemnify Harbor for its payment to IRI for damages resulting from Fluor's sole negligence.
(5) Liability for Harbor's economic loss resulting from injury to a third-party's (Alyeska) property.
After a careful review of the relevant pleadings, affidavits and memoranda, the court concludes that no genuine issues of material fact are present and that Fluor has established, as a matter of law that it is entitled to judgment in its favor on the issue of liability since Harbor's complaint, under any facts alleged, does not state a claim for recovery against Fluor.

c. Discussion

(i) Contribution.
Contribution in Alaska arises by operation of statute. Arctic Structures, Inc. v. Wedmore, 605 P.2d 426 (Alaska 1976). Alaska Stat. 09.16.010(d) (1982) states that a tort feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort feasor whose liability for the injury has not been extinguished by the release. Creole settled with the plaintiff, IRI. See Exh. 2, Harbor's opposition. Fluor was not named as a released party in that settlement. Id. Not surprisingly, although for differing reasons, the parties agree that Alas.Stat. 09.16.010 is not applicable. Accordingly, the court holds that Fluor has no liability to Creole for obligations arising from contribution.

(ii) Warranty.
As there was no contract between Creole and Fluor, no express warranty runs from Fluor to Creole, and Fluor has no obligations thereon. Neither can Fluor be liable to Harbor for Harbor's economic loss  its settlement with IRI  under an implied warranty on Fluor's services and products or strictly liable for an unreasonably dangerous product. Creole's injury is too attenuated to support a recovery based on products liability theory. Cf. Morrow v. New Moon Homes, 548 P.2d 279 (Alaska 1976) (no strict liability for economic loss); Ore-Ida Foods, Inc. v. Indian Head Cattle Co., 290 Or. 909, 627 P.2d 469 (1981) (no recovery for economic loss from negligent infliction of property damage where plaintiff has no interest in the damaged property); Pepsi Cola Bottling Co. v. Superior Burner Service Co., 427 P.2d 833 (Alaska 1967) (boiler repair company's negligent repair of plaintiff's boiler does not require application of strict liability).

(iii) Partial Indemnification.
Harbor's third-party complaint prays for indemnity based on an allocation of fault between Creole and Fluor, namely 100% liability in Fluor and 0% in Creole. In American Motorcycle Association v. Superior Court, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978), the California Supreme Court determined that a defendant who extinguished a common liability was entitled to partial equitable indemnification in an amount equal to the non-paying defendant's percentage of fault. 20 Cal.3d at 599, 578 P.2d at 912. This doctrine has been expressly rejected by the Alaska Supreme Court. See Arctic Structures, Inc. v. Wedmore, 605 P.2d at 435 n. 27. Under Alaska law, allocation of damages based on fault is accomplished through statutory contribution. Id. at 435.

(iv) Indemnification.
For the purposes of this motion only, Fluor concedes "everything Harbor alleges," namely 100% negligence. Further, there is no express indemnity agreement between Fluor and Creole. Thus the central issue raised by Fluor's motion is whether, even assuming Fluor's complete negligence, Creole can recover under the common law of indemnification. Fluor's concessions for this motion obviate the first thirteen of Creole's fourteen asserted genuine issues of fact. The fourteenth issue *1328 submitted is a question of law.[3] The court finds no other material facts in issue.
Section 76 of the Restatement of Restitution broadly outlines the common law of indemnification. It provides:
A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payer is barred by the wrongful nature of his conduct.
Restatement of Restitution, § 76 (1937).
Courts applying the general principles of this section have identified three elements of an action for common law indemnity. The indemnity claimant must plead and prove that (1) he has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter. See Fulton Ins. Co. v. White Motor Corp., 261 Or. 206, 208-10, 493 P.2d 138, 141 (1972); United Boat-builders, Inc. v. Tempo Products Co., 1 Wash.App. 177, 181, 459 P.2d 958, 960 (1969). Alaska appellate courts have not expressly adopted the Restatement of Restitution, Section 76. Instead, the Alaska Supreme Court has suggested that the law of indemnity restated there has been subsumed under the appropriate sections of the Restatement (Second) of Torts. See Vertecs Corporation v. Reichhold Chemicals, Inc., 661 P.2d 619, 621-22 n. 5 (Alaska 1983). Neither has the Alaska Supreme Court expressly identified the elements of a claim for implied indemnity. See Vertecs, 661 P.2d at 621-22. Nevertheless, the essential elements of common law indemnity, as set forth in Fulton, are not inconsistent with the law of indemnity in Alaska as the court finds it, and the court adopts those elements as a starting point in its analysis.
Focusing on the first element in a claim for indemnity, the court finds the law in Alaska clearly stated in at least one respect: The legal obligation which the claimant has discharged may not be that of a concurrent tort feasor. Vertecs, 661 P.2d at 626. The obligation may arise from the application of the doctrine of respondeat superior[4] or from contract,[5] but where the claimant himself was negligent to any degree, he may not obtain indemnity. Id.
The first element of the indemnitee's claim also raises the issue whether the person seeking indemnity must prove he was actually liable for the amount paid. The issue arises frequently, as it does here, where the person seeking indemnity has settled a claim with an injured party prior to the entry of judgment against the payor. See generally United States Fire Ins. Co. v. Chrysler Motor Corp., 264 Or. 362, 365-66, 505 P.2d 1137, 1139-40 (1973) (in banc) (indemnitor settles) and Fulton, 261 Or. 206, 493 P.2d 138 (indemnitee settles). The majority of courts addressing this question hold that if the indemnitee settles prior to judgment, as a condition of recovery from his indemnitor, the indemnitee must prove he was actually liable for the amount paid. See Fulton, 261 Or. at 212, 493 P.2d at 141 ("Probable liability is not enough. If the claimant's actual liable has not been established by a judgment, facts establishing it must be pleaded and proved in the indemnitee action."); Nelson v. Sponberg, 51 Wash.2d 371, 318 P.2d 951 (1957); Ke-Wash Co. v. Stauffer Chemical Company, Iowa, 177 N.W. 5, 10-12 (1970) and cases cited therein.
The parties have not cited nor has the court found any opinions of the Alaska Supreme Court on this issue. The court concludes, however, that were the Alaska Supreme Court to decide this issue, it would concur in the majority view and hold that claimant must plead and prove actual liability *1329 to the injured party. This conclusion is reached, first of all, on the presence of a clear trend in Alaska to limit common law indemnity actions. See, e.g., Arctic Structures v. Wedmore, 605 P.2d at 435 n. 27 (no proportionate or partial indemnification available) and Vertecs, 661 P.2d at 619 (rejects indemnity based on Restatement (Second) of Torts § 886(b) among concurrent tort feasors and "passive-active" or "primary-secondary" negligence). The result reached in this case, which compels a settling defendant to do so at the risk of proving he was not a volunteer, is consistent with that trend. Second, the majority position requiring proof of the claimant's liability not only assures that the amount of the settlement was just, but, in this instance, prevents the payor from passing the harsh effects of a contractual hold harmless clause to a defendant who otherwise would be free to assert the injured party's comparative negligence.
In this case, Creole's obligation to pay Alyeska arose either from its contract to hold Alyeska harmless or from its own negligent acts. Creole has not asserted any special relationship with Fluor whereby Creole might have been liable to Alyeska for the acts of Fluor while remaining itself without fault.
Significantly, Creole's contract with Alyeska required Creole to hold Alyeska harmless for only those injuries in which Creole itself was to some degree in fault.[6] Where the loss resulted from the sole negligence of any independent contractor, such as Fluor, directly responsible to Alyeska, Creole had no obligation to pay. Thus, in order to establish, as required by Fulton, that it was obligated to Alyeska under the terms of its contract, Creole must plead and prove, at least in some degree, that the fault lay not entirely with other parties, but with itself as well.
At the time of contracting, the escape clause of the indemnity agreement may have seemed innocuous. It insulated Alyeska from policy attacks on the hold harmless clause, whereunder Alyeska might be prevented from obtaining indemnification for its active negligence, yet would not bar Creole from an action over for indemnity against a primary or active tort feasor. But under the law in Alaska following Vertecs, Creole, in proving its obligation to pay Alyeska, proves itself out of court, since there can be no recovery in indemnity between concurrent tort feasor, and Creole had no obligation to pay other than as a concurrent tort feasor.
The court is aware of the irony and apparent harshness of this result. A party who, under the facts assumed as true, was without fault bears a substantial loss, while the party whose fault is assumed avoids liability. Although such a result runs counter to the broad policy of deterrence, the court finds it consistent with the obligations of Creole's contract and compelled by the law in Alaska. The alternative result, even were it proper under Alaska law, is equally harsh: The party compelled to give complete indemnity would be stripped of his comparative negligence defenses, which defenses he may have bargained to retain to defend an action by the injured party. Moreover, the claimant and, undoubtedly, third-party defendant's insurer are potentially efficient spreaders of this risk and perennial litigants on either side of indemnity actions.[7]

(v) Recovery for Economic Loss for Injury to Another's Property.
The fifth theory of recovery is one not actively asserted by Harbor, but proposed by Fluor as potentially available under the facts and easily dismissed. There is no recovery in Alaska for economic loss resulting from injury to a third party's property. See Ore-Ida Foods, 290 Or. 909, 627 P.2d 469.
Accordingly, IT IS ORDERED:
(1) THAT the ruling of the magistrate striking in part the affidavit of E.L. Patton is affirmed;
*1330 (2) THAT Fluor is granted summary judgment dismissing the third-party claims of Harbor against it;
(3) THAT the Clerk shall prepare a final judgment stating that the third-party claims of Harbor against Fluor are dismissed. All other claims having been settled, the case is dismissed.
NOTES
[1] Amendment No. 1 to TAPS/3030, December 9, 1976 provided, in part:

ALYESKA, for and on behalf of OWNERS, and CONSULTANT do hereby amend CONTRACT, effective November 1, 1976, as follows:
1. Consultant shall furnish additional services (hereinafter referred to as PUMP STATION SERVICES) as follows:
(1) Evaluating and establishing priorities for pump station completion;
(2) Advising the District Superintendent of any observed construction incompletions which would hinder a successful and safe start-up;
(3) Establishing the criteria for successful start-up conditions from both a technical and a safety standpoint;
(4) Communicating job requirements to the aforesaid start-up engineers' supervisors, to other start-up engineers, and to the start-up personnel being supervised;
(5) Adapting to continually changing work schedules compatible with technical support being supplied by other sources;
(6) Starting-up the pump stations successfully and safely; and
(7) Establishing, by means of leadership and on-the-job training, a degree of operational continuity and confidence with the permanent pump station technicians.
Exhibit A to Creole's Amended Answer, at 27, 28.
[2] The indemnity agreement between Alyeska, IRI's subrogor, and Creole provided, in pertinent part:

CONSULTANT shall defend, indemnify and save ALYESKA and OWNERS harmless from all liability, cost and expenses for loss of or damage to property or for injury to or death of persons, including but not limited to, the property and employees of CONSULTANT, ALYESKA and OWNERS when arising or resulting from CONSULTANT's performance of the SERVICES described herein regardless of any negligence on the part of ALYESKA or OWNERS, or third parties except such loss, damage, injury or death which may result from the sole negligence or willful misconduct of ALYESKA, OWNERS, or their agents or servants, or any independent contractors who are directly responsible to ALYESKA or OWNERS, or solely from the joint or concurrent negligence of some third party or parties and OWNERS and/or ALYESKA.
(emphasis added). TAPS 3030, paragraph 6, Exhibit A to Creole's Amended Answer.
[3] The fourteenth issue states: "Based upon the issues of material fact as set forth above, or any other fact, whether FLUOR has the legal obligation to reimburse CREOLE's insurer, HARBOR, for the monies paid by HARBOR to the original Plaintiffs in this action."
[4] See Moses v. McGarvey, 614 P.2d 1363 (Alaska 1980).
[5] See Burgess Construction Co. v. State, 614 P.2d 1380, 1382 (Alaska 1980).
[6] See Paragraph 6, TAPS 3030, supra, note 2.
[7] See generally Ore-Ida Foods, Inc. v. Indian Head Cattle Co., 290 Or. at 924, 627 P.2d at 477 (Denecke, C.J., concurring).