**BELL HELICOPTER TEXTRON, INC., A DIVISION OF TEXTRON, INC.; Sea Airmotive, Inc.; Gay Airways, Inc.; A.E. Gay, Inc.; and A.E. Gay, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. A85–685 Civ.

United States District Court, D. Alaska.

Dec. 27, 1990.

Susan M. West, Robert M. Baker, Robertson, Monagle & Estaugh, Anchorage, Alaska, for Bell Helicopter Textron, Inc.

Jonathan M. Hoffman, Martin, Bischoff, Templeton, Ericsson & Langslet, Portland, Or., for Sea Airmotive, Inc., Gay Airways, Inc., A.E. Gay, Inc. and A.E. Gay.

Thomas B. Almy, Senior Aviation Counsel, U.S. Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER GRANTING THE UNITED STATES SUMMARY JUDGMENT ON ALL INDEMNITY CLAIMS

SINGLETON, District Judge.

On September 28, 1990, this court entered an oral decision on the record granting the United States summary judgment against the plaintiffs. In this written decision, the court will summarize its reasons.

The following facts are not in dispute and are from the Ninth Circuit decision in *Bell Helicopter v. United States*, 833 F.2d 1375, 1376–77 (9th Cir.1987). On June 13, 1979, a helicopter piloted by Lieutenant William Harrigan, an officer of the National Oceanographic and Atmospheric Administration ("NOAA"), crashed near Port Hardy, British Columbia. The crash occurred during Harrigan's attempt to land after running out of gas. A passenger, Gary Mitchell, a civilian employee of NOAA, and Harrigan were both seriously injured.

Mitchell and Harrigan sued Bell Helicopter Textron, Inc. ("Bell"), the manufacturer of the aircraft, as well as Sea Airmotive, Inc. ("Sea Air"), and Gay Airways, Inc. ("Gay"), the seller and lessor of the aircraft, respectively, in a consolidated action in Alaska Superior Court. They alleged that Bell, Sea Air and Gay were liable in tort for manufacturing and furnishing the helicopter to the United States ("the government") in an uncrashworthy condition. On February 20, 1985, the case settled for approximately 2.4 million dollars.

After the crash, Mitchell also received benefits available to him under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.* (1980). Most of these FECA benefits were later repaid to the government by Mitchell as required by statute.

Following the settlement of Mitchell's claims against them, Bell, Sea Air and Gay (collectively "plaintiffs") sued the government for indemnity or contribution pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq.* (1976 & Supp.1990). Plaintiffs argue that the crash occurred because Harrigan was negligent in failing to properly undertake preflight planning procedures in Alaska, by permitting the aircraft to run out of gas, and in refusing plaintiffs' offer to remedy an alleged defect prior to the crash—to provide shoulder harnesses.

District Court Judge James A. Fitzgerald dismissed the action on the grounds that the government, when treated as a private employer, enjoys immunity from claims of contribution and indemnity afforded it under the Alaska Workers' Compensation Act ("AWCA") (Alaska Stat. §§ 23.30.005–23.-30.145). Alaska Stat. § 23.30.055 (1984).[1] On appeal, the Ninth Circuit agreed with Judge Fitzgerald that plaintiffs' claims for indemnity and contribution were barred by the exclusive-remedy provision of AWCA. *Bell*, 833 F.2d at 1378–79. In reaching its conclusions, the court relied heavily on its earlier decision in *LaBarge v. County of Mariposa*, 798 F.2d 364 (9th Cir.1986), *cert. denied sub nom. County of Mariposa v. United States*, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 497 (1987).

Following *LaBarge*, the court affirmed Judge Fitzgerald's conclusion that the federal courts must look to Alaska law to determine questions of contribution and indemnity. The FTCA only extends liability to the government under circumstances where a private person would be liable according to the law of the place where the

---

1. Alaska Statute § 23.30.055 (1990) was amended effective July 1, 1988. The amendments apply to injuries sustained on or after July 1, 1988, and therefore would not be applicable to this case. *See* ch. 79, SLA 1988. The amendments added the following sentence: "The liability of the employer is exclusive even if the employee's claim is barred under AS 23.30.022."

act or omission occurred. 28 U.S.C. § 1346(b). The court concluded that for purposes of indemnity, the government should be treated as a private employer who would be immune from indemnity by virtue of the exclusivity provision of AWCA.

The court specifically rejected the contention that third-party claims for indemnity were expressly permitted by FECA, thereby distinguishing *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983). The court interpreted *Lockheed* to hold that FECA itself did not preclude third-party claims for indemnity. However, the courts must still look to the underlying substantive law, which in this case is FTCA. The court determined that FTCA requires an interpretation of the law of the state in which the tort occurs, to answer the question of whether state law would permit indemnity and contribution claims by a third party against the employer for damages paid to an injured employee.

While the Ninth Circuit largely agreed with Judge Fitzgerald's handling of the case, the court concluded that the district court had failed to address certain issues that must be addressed in order to completely resolve the case. *Bell*, 833 F.2d at 1379. Specifically, questions of express contractual indemnity, implied contractual indemnity, and implied noncontractual indemnity were left open by Judge Fitzgerald's decision. Therefore, the Ninth Circuit remanded the case to address these issues. In so doing, it directed the attention of this district court to two prior decisions, *Northwest Airlines, Inc., v. Alaska Airlines, Inc.*, 343 F.Supp. 826 (D.Alaska 1972) and *Industrial Risk Insurers v. Creole Prod. Servs., Inc.*, 568 F.Supp. 1323, 1328 (D.Alaska 1983), *aff'd*, 746 F.2d 526 (9th Cir.1984), which the court thought might be helpful on remand.

On remand, the government asked Judge Fitzgerald to enter judgment in its favor arguing that the Ninth Circuit had misconstrued Alaska law. Judge Fitzgerald declined to do so, reasoning that the Ninth Circuit had asked him to consider the requirements set out in *Industrial Risk Insurers* which Judge Fitzgerald concluded would govern further proceedings in this case. The government then filed a motion to dismiss which plaintiffs opposed. In the meantime, the case was reassigned to District Court Judge Andrew H. Kleinfeld. Judge Kleinfeld concluded that the case should be decided on motions for summary judgment rather than on a motion to dismiss, to ensure that all relevant facts would be marshalled and a complete picture of the case disclosed. Thereafter, both parties moved for summary judgment. The case was later reassigned to me, and as a housekeeping measure, I entered an order denying the motion to dismiss without prejudice, to allow consideration of the issues raised in connection with the pending motions for summary judgment.

■ At the outset, we are faced with the doctrine of the "law of the case." This court should not reexamine an issue previously decided by it or a higher court in the same case in the absence of good cause. *See Richardson v. United States*, 841 F.2d 993, 996 (9th Cir.1988) *amended*, 860 F.2d 357 (9th Cir.1988). Good cause exists to reexamine, only where the prior decision overlooked or failed to consider controlling law, where there has been an intervening change in the law, or where the evidence on remand is substantially different on significant issues from the record that existed at the time of the earlier decision. *See, e.g., Planned Parenthood of Cent. & N. Arizona v. Arizona*, 718 F.2d 938, 949 (9th Cir.1983), *aff'd mem. sub nom. Babbitt v. Planned Parenthood of Cent. & N. Arizona*, 479 U.S. 925, 107 S.Ct. 391, 93 L.Ed.2d 346 (1986). The Ninth Circuit and Judge Fitzgerald have previously decided that plaintiffs' right to indemnity and contribution is governed solely by the law of the State of Alaska and that in determining whether there is a right to indemnity or contribution, we must consider the government as a private employer who has paid compensation under the Act and is subject

to AWCA. *Bell*, 833 F.2d at 1378; *La-Barge*, 798 F.2d at 366–68.[2]

■ The Ninth Circuit did not determine whether Alaska law would or would not allow indemnity or contribution under the applicable facts. It simply directed this district court to consider those issues and decide them. We are thus faced with three issues. First, would the law of Alaska recognize an action by a third party for indemnity from the employer of an employee injured in part by the actions of the third party based upon an express contract to indemnify, despite the exclusive remedy provision of AWCA? The answer is yes. *See Northwest Airlines*, 343 F.Supp. at 828–29; *Manson–Osberg Co. v. State*, 552 P.2d 654, 658–59 (Alaska 1976).

On appeal, the Ninth Circuit declined to consider the issue of an express right to indemnity because plaintiffs had failed to plead it or present it to the trial court. On remand, the parties seem to believe that the Ninth Circuit has instructed this district court not to consider that issue, but that does not seem to be the thrust of the Ninth Circuit's opinion. Rather, while declining to consider the matter for the first time on appeal, the court did not preclude this district court from considering questions of express indemnity on remand if they were properly presented, either by a motion to amend relevant pleadings, or by presentation in an appropriate motion such as a motion for summary judgment. It is not necessary to address that issue, however, because the parties have not requested that the court do so.[3]

■ Second, would Alaska law recognize a third party's right to implied contractual indemnity against the employer of the in-

jured employee despite AWCA? Here, the answer seems to be no. *See Lake v. Construction Mach., Inc.*, 787 P.2d 1027, 1031 (Alaska 1990); *see also Providence Washington Ins. Co. v. DeHavilland Aircraft Co.*, 699 P.2d 355, 357–58 (Alaska 1985); *Manson–Osberg Co.*, 552 P.2d at 658–59; *Golden Valley Elec. Ass'n v. City Elec. Serv., Inc.*, 518 P.2d 65, 69 (Alaska 1974).[4]

Third, would Alaska law recognize a third party's noncontractual right to indemnity against the injured party's employer under the common law despite AWCA? *See* Restatement of Restitution § 76 (1936); Restatement (Second) of Torts § 886(1)(B). This is the most difficult question presented on remand. On the one hand, Alaska law does recognize a noncontractual right to indemnity under some circumstances. *See Fairbanks North Star Borough v. Roen Design Assocs., Inc.*, 727 P.2d 758, 760–62 (Alaska 1986), *appeal after remand, Fairbanks North Star Borough v. Kandik Constr., Inc. & Assocs.*, 795 P.2d 793 (Alaska 1990) (*reh'g granted* for Roen Design on April 17, 1990); *Heritage v. Pioneer Brokerage & Sales, Inc.*, 604 P.2d 1059, 1065–67 (Alaska 1979). Alaska law apparently does not recognize such a right where the third party sues the employer for injury to an employee. *Providence Washington Ins. Co.*, 699 P.2d at 357.

On the other hand, the issue of a noncontractual right to indemnity between a third party held liable to an injured employee and the employer has been specifically reserved by the Alaska Supreme Court. *Arctic Structures, Inc., v. Wedmore*, 605 P.2d 426, 436 n. 36 (Alaska 1979); *Golden Valley Elec. Ass'n*, 518 P.2d at 69 n. 16. However, more recent cases suggest that only a

---

**2.** Plaintiffs point out that Alaska Stat. § 23.30.055 only shields employers who are subject to the Act and pay compensation under it. They argue that the government does not satisfy this test. *LaBarge* precludes this argument.

**3.** The government has argued that if the plaintiffs were seeking express contractual indemnity from the government in an amount in excess of $10,000, the Court of Claims would have exclusive jurisdiction over the case under the Tucker Act. 28 U.S.C. §§ 1346(a)(2), 1491. *See DSI Corp. v. Secretary of Housing & Urban Dev.*, 594 F.2d 177, 180 (9th Cir.1979). The government

also argues that plaintiffs in fact submitted their claims for express indemnity to the Board of Contract Appeals and those claims were rejected on the ground that the contract did not provide for express indemnity. *See Gay Airways, Inc.*, 84–1 B.C.A. (CCH) ¶ 17,199 (1984).

**4.** It would appear that a claim for implied contractual indemnity, as opposed to implied noncontractual indemnity, for an amount greater than $10,000 would also be within the exclusive jurisdiction of the Court of Claims. *See* 28 U.S.C. §§ 1346(a)(2), 1491.

third-party's express contractual right to indemnity from the employer will be recognized. *See, e.g., Lake,* 787 P.2d at 1031.

■ Having carefully reviewed the authorities, I am satisfied that Alaska law would not recognize an action for implied noncontractual indemnity by the plaintiffs against the government under the undisputed facts of this case. A number of reasons lead me to this conclusion.

First, *Northwest Airlines* and *Industrial Risk Insurers* are not on point. *Northwest* involved express contractual indemnity and *Industrial Risk Insurers* did not involve an attempt to recover indemnity from an employer protected by AWCA's exclusive remedy provision for damages paid to an injured employee.

■ Second, *Industrial Risk Insurers,* 568 F.Supp. at 1328, establishes a three-part test that must be met in order for a noncontractual right of indemnity to arise under Alaska law. The test requires that the indemnitee must discharge a legal obligation, *i.e.,* a tort liability to a third party. This requirement is met in this case. The other two requirements are that the indemnitor must also be liable to the third party for the same obligation, and as between the indemnitee and the indemnitor, the obligation ought to be discharged by the latter. *Id.*

The government was not liable in tort to Mitchell because of the exclusive remedy provision of AWCA. *See Providence Washington Ins. Co.,* 699 P.2d at 357.[5] In addition, Alaska law would not support a finding that the government, rather than plaintiffs, ought to discharge the plaintiffs' tort obligation to Mitchell. *See State v. Wien Air Alaska, Inc.,* 619 P.2d 719, 720 (Alaska 1980). This latter conclusion finds support in a number of considerations.

■ Alaska had adopted the Uniform Contribution Among Tortfeasors Act at the time this case arose. *See* former Alaska Stat. §§ 09.16.010–09.16.060 (1983).[6] Contribution, therefore, largely displaced the common law in noncontractual actions for implied indemnity in Alaska. *Vertecs Corp. v. Reichhold Chems., Inc.,* 661 P.2d 619, 625–26 (Alaska 1983). Nevertheless, AWCA precludes the assertion of a contribution claim against the employer even if the employer's negligence was the proximate cause of the employee's injury. *Lake,* 787 P.2d at 1029; *Wien,* 619 P.2d at 720. It would be anomalous to reject the favored remedy—contribution, but recognize the disfavored remedy—implied noncontractual indemnity. *Cf. State Mechanical, Inc. v. Liquid Air, Inc.,* 665 P.2d 15, 17–18 n. 2 (Alaska 1983) (declining to expand common law indemnity to overlap and judicially abrogate portions of the Contribution Act).

■ Even if AWCA were not a bar, plaintiffs could not prevail on a theory of implied noncontractual indemnity under the facts of this case. Generally, implied indemnity requires a preexisting duty to indemnify arising out of the pretort relationship between the alleged indemnitor and indemnitee. *Providence Washington Ins. Co.,* 699 P.2d at 357–58. The relationship is usually contractual. The Alaska Supreme Court has recognized an implied right to indemnification by a principal held vicariously liable for the tort of its agent. *Moses v. McGarvey,* 614 P.2d 1363, 1373–74 (Alaska 1980); *Austin v. Fulton Ins. Co.,* 498 P.2d 702, 704–05 (Alaska 1972) (relying on Restatement (Second) of Agency §§ 399 & 401).

■ Strict liability for marketing a defective product was apparently the theory of recovery. The plaintiffs were not held liable to Mitchell on the theory that a prin-

---

5. It is lack of a common tort obligation that apparently bars a claim for contribution. *Lake,* 787 P.2d at 1031. The reasons for this are considered in a lucid opinion by the Maryland Court of Appeals in *Montgomery County v. Valk Mfg. Co.,* 317 Md. 185, 562 A.2d 1246 (1989). These reasons would be equally applicable to an action for implied noncontractual indemnity.

6. The Uniform Act was repealed by Initiative Proposal No. 87–2, § 2, effective March 5, 1989. See also § 9 ch. 139 SLA 1986 which governs all causes of action accruing after June 11, 1986, and therefore would not apply to this case. *See Ogle v. Craig Taylor Equip. Co.,* 761 P.2d 722 (Alaska 1988).

ciple was liable for the negligence of its agent, the government. Alaska recognizes a right of a retailer, downstream in the chain of distribution of a manufactured article, sued on a theory of strict liability, to obtain indemnity from the manufacturer. *Koehring Mfg. Co. v. Earthmovers of Fairbanks, Inc.*, 763 P.2d 499, 502–04 (Alaska 1988); *Ross Laboratories, Div. of Abbott Laboratories v. Thies*, 725 P.2d 1076, 1081 (Alaska 1986); *D.G. Shelter Prods. Co. v. Moduline Indus., Inc.*, 684 P.2d 839, 841 (Alaska 1984). Alaska would not, however, recognize a right in the manufacturer found strictly liable, to seek indemnity from those downstream in the distribution chain, whose negligence contributed to the total loss. *Koehring*, 763 P.2d at 504 n. 7 (citing *Allison Steel Mfg. Co. v. Superior Court*, 20 Ariz.App. 185, 511 P.2d 198, 202–03 (1973)).

■ Under Alaska law, where the manufacturer is strictly liable and the retailer or downstream user of the article is negligent, neither would appear to be entitled to indemnity from the other, though each could arguably seek contribution under the contribution statute. *Id.; cf. Ogle*, 761 P.2d at 725 (apparently recognizing a right to contribution between a manufacturer and a retailer under such circumstances). *See also Rabon v. Automatic Fasteners, Inc.*, 672 F.2d 1231, 1235 (5th Cir.1982) (applying Florida law and holding that one who is strictly liable for a defective product is not merely vicariously liable, but is to be entitled to implied indemnity from those whose negligent use of the defective product causes injury to others); *Symons v. Mueller Co.*, 526 F.2d 13, 17–19 (10th Cir.1975) (same—applying Kansas law); *W.D. Rubright Co. v. International Harvester Co.*,

358 F.Supp. 1388, 1398–1400 (W.D.Pa.1973) (cited with apparent approval in *Ogle*, 761 P.2d at 725 n. 4) (implying that those strictly liable and those who are negligent are both tortfeasors under the act).[7]

■ If the government's servant, Harrigan, misused the product, or he or Mitchell assumed the risk of any defect, that might have insulated the plaintiffs from liability to Mitchell. *See Caterpillar Tractor Co. v. Beck*, 593 P.2d 871, 883 (Alaska 1979). It would not have created a duty in the government to indemnify the plaintiffs. *See Santisteven v. Dow Chem. Co.*, 506 F.2d 1216, 1219–20 (9th Cir.1974) (applying Nevada law). Finally, the government did not fly the helicopter. Its servant, Harrigan, did. The government's liability, if any, would be vicarious based on the doctrine of *respondeat superior*. The government would therefore be as much without fault as the plaintiffs, although this would be based on different doctrines of liability. Thus, there is no reason why Alaska law would hold the vicariously liable employer morally obligated to pay the strictly liable manufacturer's obligation to the injured employee.

IT IS THEREFORE ORDERED:

The government is entitled to summary judgment against all plaintiffs, dismissing all claims for contribution and indemnity.[8]

7. This is clear under current Alaska law. *See* Alaska Stat. § 09.17.900 (Supp.1990) which defines "fault" to include both negligence and strict liability. It is less clear under former law. *See Koehring*, 763 P.2d at 502–04 (holding that as between a manufacturer and a lessor both liable to a third party on the basis of strict liability, the lessor was entitled to indemnity because it was not at fault in the sense used in *Vertecs*). In context, the court was simply applying the rule that those downstream in the distribution chain were entitled to indemnity from those upstream and not vice-versa. *Id.* at

504 n. 7. The supreme court in *Koehring* seems to agree with the reasoning I have used in this case.

8. *Fairbanks North Star Borough v. Kandik Constr.*, 795 P.2d 793 (earlier decision *Fairbanks North Star Borough v. Roen Design*, 727 P.2d 758) is not inconsistent with the decision in this case. It did not involve a claim by a third party to recover indemnity from an employer whose employee was injured by the third party.