**ROSS LABORATORIES, a DIVISION OF ABBOTT LABORATORIES, and Pay 'N Save Corporation, Appellants,**

v.

**Jan A. THIES, as best friend of Kylee Gayle Thies, Appellee.**

**PAY 'N SAVE CORPORATION, Appellant,**

v.

**ROSS LABORATORIES, a DIVISION OF ABBOTT LABORATORIES, and Jan A. Thies as best friend of Kylee Gayle Thies, Appellees.**

Nos. S–946, S–955.

Supreme Court of Alaska.

Oct. 3, 1986.

Rehearing Denied Oct. 31, 1986.

rior court's limitation of rebuttal and its refusal to instruct on res ipsa loquitur.

Robert L. Eastaugh, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for Ross Laboratories.

Dennis M. Bump and Kenneth D. Lougee, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for Pay 'N Save Corp.

James A. Parrish and Albert G. Parrish, Parrish Law Office, APC, Fairbanks, for Jan A. Thies.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

This is a products liability and negligence action brought by Jan Thies on behalf of her infant daughter, Kylee. Jan Thies fed Polycose, a product made by Ross Laboratories, to Kylee. Kylee became severely dehydrated. Polycose is a solution consisting of glucose and water which is dangerous to infants if it is not sufficiently diluted. Thies contends that Ross and Pay 'N Save, the retailer which placed Polycose on its baby products shelf and from whom Thies's sister-in-law, Pat Schmidt, purchased the product, are liable for Kylee's injuries.

After considerable discovery, the parties made numerous motions for summary judgment and the defendants moved to add Thies and Schmidt as third-party defendants. The trial court ruled that:

1. Pay 'N Save and Ross were liable on the basis of strict products liability;

2. Ross was liable under the doctrine of negligence per se for violating AS 17.20.-290(1);

3. Pay 'N Save was not entitled to indemnity from Ross;

4. Plaintiff's claim for punitive damages against Ross raised a question of fact to be submitted to the jury; and

5. Thies and Schmidt should not be joined as third-party defendants.

These rulings are challenged on appeal.

## STRICT PRODUCTS LIABILITY

Manufacturers and retailers are strictly liable in tort for personal injuries caused by defects in products they make or sell. *Clary v. Fifth Avenue Chrysler*, 454 P.2d 244, 246–48 (Alaska 1969). "A product is defective if the use of the product in a manner that is reasonably foreseeable by the defendant involves a substantial danger that would not be readily recognized by the ordinary user of the product and the manufacturer fails to give adequate warning of such danger." *Prince v. Parachutes, Inc.*, 685 P.2d 83, 88 (Alaska 1984), quoting California Jury Instruction § 9.00.7.

▆▆ Ross and Pay 'N Save argue that a genuine issue of material fact exists as to whether it was reasonably foreseeable that Polycose would be fed to infants. The Polycose label contains no warning that the product is dangerous if it is not sufficiently diluted. Polycose is sold in a nipple-ready bottle. Ross markets many products for consumption by infants in the same bottle. One such product is called "5% Glucose Water." It is similar to Polycose, but is diluted before feeding to make it safe. Polycose's label resembles in pattern, though not in color, that of "5% Glucose Water."

The nipple-ready bottle, taken together with the similarity in name, label, and contents with recognized baby products, required Ross to foresee that some consumers would mistakenly believe that Polycose was a product to be fed to infants. In our

view, there is no genuine issue on this point.

■ Pay 'N Save, though not Ross, also argues that there was a question of fact as to whether or not the benefits of an adequate warning would be justified by the added costs of such a warning. In our view, no such cost benefit analysis is required. The cost of giving an adequate warning is usually so minimal, i.e., the expense of adding more printing to a label, that the balance must always be struck in favor of the obligation to warn where there is a substantial danger which will not be recognized by the ordinary user. *See Moran v. Faberge, Inc.*, 273 Md. 538, 332 A.2d 11, 15 (Ct.App.1975); *cf. Freund v. Cellofilm Properties, Inc.*, 87 N.J. 229, 432 A.2d 925, 930 n. 1 (1981); *Dambacher v. Mallis*, 336 Pa.Super. 22, 485 A.2d 408, 427 n. 7 (1984), *appeal dismissed*, 508 Pa. 643, 500 A.2d 428 (1985).

■ There is no doubt that undiluted Polycose involves a substantial danger of dehydration to infants. This happens because, in the words of Dr. John MacFarland, Kylee's pediatrician, undiluted Polycose contains

> an excess osmotic load, that is to say an excess of molecules ... that draw in water.... [T]here are a variety of ways of giving too much of an osmotic load, but basically that is what Polycose does, and this then pulls water into the intestine and causes the diarrhea so the baby then loses the water.

The ordinary consumer of Polycose would not readily recognize the danger of excess osmotic loads.

■ Pay 'N Save and Ross argue that there is a genuine issue of material fact as to an aspect of proximate causation. They do not dispute that Kylee was hospitalized as a result of the ingestion of Polycose. But they argue that it is a question of fact whether or not an adequate warning, if one had been given, would have been followed.

There is no evidentiary support for this argument. The employees of Pay 'N Save who made the decision to stock Polycose on the baby products shelf of the store testified that they read the Polycose label before making their decision. Likewise, the purchaser, Pat Schmidt, and the mother, Jan Thies, testified that they read the label. There was nothing that suggests that any of these parties were incapable of understanding an adequate warning or that such a warning would not have been heeded by them.

■ Ross also argues that Pay 'N Save's misuse of the product, i.e., stocking it on the baby products shelves instead of the adult dietary shelf, caused the injury, and therefore Ross did not put a defective product on the market. Even if these facts were true, we reject the argument because it was reasonably forseeable that a product packaged in a container which looks like a baby bottle and has a name and label similar to another baby product would confuse people into thinking that it was, in fact, a baby product. The duty to foresee extends beyond foreseeing only careful uses. Mistake, inadvertence, and negligence are everyday occurrences. Ross should have placed a warning on the product to protect consumers against mistakes by Pay 'N Save or other merchants. The safety of infants should not rest on the stocking wisdom of the retailer.

## NEGLIGENCE PER SE—STATUTORY LIABILITY

■ The Alaska Food, Drug and Cosmetic Act, AS 17.20.290(1), prohibits the manufacture or sale of drugs which are "misbranded." [1] Under this Act, a substance is misbranded unless it bears "adequate" directions and warnings, AS 17.20.090(6), and the container is not made, formed, or filled so as to be misleading. AS 17.20.090(9). The Act was clearly designed to protect consumers of drugs from unappreciated

---

1. The statute states: "Prohibited Acts. (a) The following acts and the causing thereof are prohibited: (1) the manufacture, or sale, or deliv- ery, holding or offering of sale of food, drug, device, or cosmetic that is adulterated or misbranded...." AS 17.20.290(1).

dangers and thus it properly may form the basis for civil liability in tort.[2]

Ross argues that the statute merely restates a general negligence standard of care. According to Ross, "adequate" is no different than a standard of reasonableness. The issue in this case is not the adequacy of any warning, as no warning was given. The issue is whether a warning against infant use was required. That question is answered specifically in the affirmative by AS 17.20.090(6).

■ Ross also argues that Polycose is not a drug within the meaning of AS 17.20.-090. Alaska Statute 17.20.370(6) sets out the definition for the word "drug":

"drug" means an article recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary; *an article intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or animal;* an article other than food, intended to affect the structure or function of the body of man or animal; and an article intended for use as [a] component of an article specified in this paragraph but does not include devices or other components, parts, or accessories....

(Emphasis added). The primary dispute between Ross and Thies centers on the meaning of the italicized clause. Ross argues that Polycose is a food supplement and was not intended to cure, treat, prevent, or mitigate disease. It contends that: "Just because Polycose is given to persons who are ill or injured does not mean that it is a drug, anymore than would be water, ba-

nanas, or other natural or manufactured substances which are food."

Under the statute, however, the terms food, and drug, are not mutually exclusive. A food may be a drug so long as it is intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease. For example, in *United States v. 250 Jars of U.S. Fancy Pure Honey,* the court determined that honey was a drug under the similar federal act[3] because of claims made by its distributor that it was "a panacea for various diseases that have plagued man from time immemorial." 218 F.Supp. 208, 211 (E.D.Mich.1963), *aff'd,* 344 F.2d 288 (6th Cir.1965).

The Polycose Training Manual published by Ross demonstrates that Ross intended Polycose to be used for the treatment and mitigation of numerous diseases. This indicates the manufacturer's intent that Polycose be prescribed by physicians. We conclude that Polycose was a drug within the meaning of the statute. Moreover, Polycose is listed in the Physicians Desk Reference, a commonly utilized drug reference book. The Physicians Desk Reference provides information made available by manufacturers; it contains the following notice concerning Polycose: "UNDILUTED POLYCOSE LIQUID SHOULD NOT BE FED TO INFANTS OR COMATOSE PATIENTS WITHOUT PHYSICIAN SUPERVISION."

■ Ross also argues that a fact question existed as to whether or not any statutory violation by Ross was excused by Ross's good faith belief that Polycose was not a drug. This argument is without mer-

**2.** *See generally Northern Lights Motel v. Sweeney,* 561 P.2d 1176, 1183 (Alaska 1977) (a statute may form the standard of care where its purpose is to protect the person and interests involved against the particular injury and kind of harm which resulted), *aff'd on rehearing,* 563 P.2d 256 (Alaska 1977).

**3.** The Federal Food, Drug, and Cosmetic Act provides:
The term "drug" means (A) articles recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary,

or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (D) articles intended for use as a component of any article specified in clauses (A), (B), or (C) of this paragraph; but does not include devices or their components, parts, or accessories.
21 U.S.C. § 321(g)(1) (1983).

it because the statute does not recognize such an excuse.

Ross also argues that there are fact issues concerning causation and adequacy of the label. This argument is the same as that which was made, and which we have rejected, with respect to the strict liability claim.

INDEMNITY

Pay 'N Save claims that it is entitled to indemnity from Ross. The trial judge ruled that "Pay 'N Save is not entitled to indemnity against Ross Laboratories," but did not elaborate.

 The general rule is that a retailer who is liable on a theory of strict liability may obtain indemnity from the manufacturer, provided that the retailer was not negligent. *See* 3 R. Hursh and H. Bailey, American Law of Products Liability § 18.4, at 91–93 (2d ed. 1975); *see also* 3A L. Frumer and M. Friedman, Products Liability § 44.02[1], at 15–18 (1985) (seller should get indemnity from the originally responsible party). On the other hand, if the retailer and manufacturer are concurrently negligent, no claim for indemnity will lie. *Vertecs Corp. v. Reichhold Chemicals*, 661 P.2d 619, 626 (Alaska 1983).

The problem here is that even if Pay 'N Save did not act negligently, it is liable under AS 17.20.290(1). This statute applies equally to the manufacturer *and the retailer* of misbranded drugs. Yet the conduct which gives rise to a claim under AS 17.20.290(1) against a retailer who sells a drug which is misbranded because it does not contain an adequate warning is identical to that supporting a claim in strict products liability against a retailer who sells a drug which is defective because it does not contain an adequate warning. The retailer who has violated the statute and is thus liable in tort would commonly be said to have been negligent per se. However, the basis for the retailer's liability perhaps could as aptly be called strict liability per se. *See* Restatement (Second) of Torts § 286 comment d, at 26–27 (1965)

("Again on the same basis, statutory provisions have been accepted by the courts as a basis for civil liability in actions for tort other than negligence, such as trespass, deceit, nuisance, or even strict liability.").

The parties have not briefed the question whether a retailer who is liable under AS 17.20.290(1) for selling a misbranded product, whose fault is no greater than that necessary for a determination of liability under the doctrine of strict products liability, is precluded because of the existence of the statute from maintaining an action for indemnity against the drug manufacturer.[4] If it is determined following our remand that Pay 'N Save was not negligent in fact, the issue as to Pay 'N Save's right to indemnity from Ross should be determined by the trial court upon adequate briefing. As the case now stands, it cannot be said that Pay 'N Save is necessarily barred from maintaining an indemnity claim against Ross.

PUNITIVE DAMAGES

 The trial court ruled that Thies was not entitled to punitive damages against Pay 'N Save and that whether punitive damages would be available against Ross was a question of fact. We have stated that punitive damages are a harsh remedy "not favored in law." *Alaska Placer Co. v. Lee*, 553 P.2d 54, 61 (Alaska 1976). We have also stated: "In order to recover punitive or exemplary damages, the plaintiff must prove that the wrongdoer's conduct was 'outrageous, such as acts done with malice or bad motives or a reckless indifference to the interests of another.'" *Sturm, Ruger & Co. v. Day*, 594 P.2d 38, 46 (Alaska 1979), (*quoting Bridges v. Alaska Housing Authority*, 375 P.2d 696, 702 (Alaska 1962)), *modified on other grounds*, 615 P.2d 621 (1980) and 627 P.2d 204 (1981), *cert. denied*, 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981).

We see no basis for a punitive damages claim against Pay 'N Save and thus the trial court's order as to Pay 'N Save is affirmed.

**4.** Nor was this point raised in the superior court.

██ A closer question is presented with respect to Ross. We have stated that in a products liability case where "the manufacturer knew that its product was defectively designed and that injuries and deaths had resulted from the design defect, but continued to market the product in reckless disregard of the public's safety, punitive damages may be awarded." *Sturm, Ruger & Co. v. Day,* 594 P.2d at 47. Ross's conduct does not satisfy this standard. No evidence has been presented that Ross knew that undiluted Polycose had been fed to infants and injured them before the accident. Jan Thies first gave Polycose to Kylee on September 13, 1979, and continued through the morning of September 15, 1979. The Ross management first became aware of the problem with Polycose when it received a report that a customer in New York had fed Polycose to an infant. The New York incident occurred at about the same time that Kylee was fed Polycose. Otherwise, Ross received no injury reports in the previous five years of product sales. We see no evidence of conduct which could fairly be characterized as outrageous. Thus, the court erred in ruling that Ross may be subject to punitive damages for its conduct.

## FAILURE TO JOIN THIES AND SCHMIDT AS THIRD–PARTY DEFENDANTS

Both Ross and Pay 'N Save argue that Schmidt and Jan Thies, in her personal capacity, should have been joined as third-party defendants.

██ A defendant may not bring in a third-party defendant without leave of court unless the third-party complaint is filed no later than ten days after service of the original answer. Alaska R.Civ.P. 14. The time deadline was allowed to pass in this case. The trial court's decision concerning leave to permit the filing of a third-party complaint after the ten day deadline has passed is discretionary. *See Jackson*

*v. Nangle,* 677 P.2d 242, 251 (Alaska 1984). Relevant factors which may be considered in ruling on a motion to file a third-party complaint are timeliness, possible prejudice, likelihood of causing delay, complication of the issues in the trial, the merit of the complaint, and the additional expense to the parties. *Id.* The trial court could have regarded the third-party complaints as untimely [5] and as unnecessarily complicating the trial which must take place. We find no abuse of discretion in refusing to allow the third-party complaints to be filed.

In summary, the determination of the trial court (1) as to strict liability is AFFIRMED as to both defendants; (2) as to negligence per se of Ross for violating AS 17.20.290(1) is AFFIRMED; (3) that Pay 'N Save is not entitled to indemnity is VACATED; (4) that Pay 'N Save was not liable for punitive damages is AFFIRMED; (5) that punitive damages as to Ross raised a question of fact for trial is REVERSED; and (6) that Schmidt and Thies should not be joined as third-party defendants is AFFIRMED. This case is REMANDED for further proceedings.

MOORE, J., not participating.

██

---

**5.** Thies filed suit in 1979 and the defendants first moved to join her as a third-party defend-

ant in 1983.