**KOEHRING MANUFACTURING COMPANY, Appellant and Cross–Appellee,**

v.

**EARTHMOVERS OF FAIRBANKS, INC., Appellee and Cross–Appellant.**

Nos. S–1910, S–1921 and S–1946.

Supreme Court of Alaska.

Oct. 21, 1988.

Rehearing Denied Nov. 16, 1988.

David H. Thorsness and Matthew K. Peterson, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellant and cross-appellee.

Lloyd I. Hoppner and Scott L. Taylor, Hoppner & Paskvan, P.C., Fairbanks, for appellee and cross-appellant.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

Koehring Manufacturing Company (Koehring) and Earthmovers of Fairbanks (Earthmovers) were found liable in strict product liability for injuries suffered by welders using a crane manufactured by Koehring and owned by Earthmovers. The injured workers, not party to this appeal, were employed by or doing contract work for the City of Nenana, which had leased the crane from Earthmovers. Thus Earthmovers was found strictly liable as lessor and Koehring strictly liable as manufacturer of a defectively designed product. The trial court held that Earthmovers was entitled to indemnification from Koehring. Koehring appeals this ruling. Earthmovers cross appeals for additional attorney's fees and discovery sanctions against Koehring. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND.[1]

The crane involved in the accident was manufactured by Koehring in 1980. It was purchased by Earthmovers from Carde Pacific Corporation (Carde) as a used crane several years later. Earthmovers leased the crane to the City of Nenana (Nenana) for use on a dock construction project.

Nenana used the crane in part as a platform to lift and hold welders in position for work on the top of a piling. While lifting the welders in a manbasket suspended from the crane boom, the block holding the

---

**1.** Due to the issues raised by Koehring, this section sets forth more detail than is usually required.

manbasket came into contact with the end of the crane and the cable suspending the basket broke. The welders fell approximately 20 feet to the ground and were injured.[2]

The action of raising the block to come in contact with the end of the crane boom is called "two-blocking." Devices that prevent or warn a crane operator of impending contact are called "anti-two-blocking devices." The asserted design defect in this crane was the absence of such a device.

The injured welders sued Nenana for negligence. They then amended their complaint by joining Earthmovers as a defendant, alleging negligence and strict product liability theories of recovery against it. Earthmovers filed a third-party complaint for indemnity against Koehring and Richie Bros. Auctioneers, Inc., (Richie Bros.) on strict product liability and breach of warranty theories. Koehring filed an answer generally denying Earthmovers' allegations, and affirmatively alleging that "[t]he cause of the accident described in plaintiff's [the injured welder] complaint and third-party plaintiff's [Earthmovers] complaint, was the negligence of the plaintiff and/or the operator of the crane at the time of the accident," that plaintiff was comparatively at fault and that plaintiff was negligent *per se.* Richie Bros. answered similarly, claimed common law indemnity from Koehring and contractual indemnity from Earthmovers, and asserted the comparative negligence of Earthmovers to reduce any award.

The injured welders next filed a second amended complaint joining Koehring as a defendant, alleging negligence and strict product liability theories of recovery. Koehring filed an answer generally denying the allegations and alleging 20 affirma-

tive defenses, none of which was directed at the conduct of Earthmovers.[3]

Earthmovers then filed an amended third-party complaint adding a new party, Carde. Koehring did not file any answer to this pleading. Richie Bros. was dismissed by stipulation. Carde was dismissed on motion opposed by Earthmovers.

The injured welders eventually abandoned all negligence theories of liability and proceeded to trial against Earthmovers and Koehring solely on the strict product liability theory of defective product design. Koehring moved for partial summary judgment dismissing the indemnity claims brought by Earthmovers. Koehring argued that joint tortfeasors, even in strict product liability, are not entitled to indemnity without a contractual obligation.[4] Koehring also argued that Earthmovers could be held strictly liable to the plaintiffs based upon its own conduct, irrespective of the conduct of Koehring.

Koehring asserted, and Earthmovers did not deny, that Earthmovers is a commercial lessor of heavy construction equipment. Further, Earthmovers inspected the crane after purchasing it from Carde, and thus knew it did not have an anti-two-blocking device. Earthmovers did not install such a device, although it could have, nor did it intend to do so because it did not believe such was necessary. It never contacted Koehring about anti-two-blocking devices, even though one of its own employees had been injured in a two-blocking incident. After this latest accident, it installed the devices. On the basis of these assertions, Koehring claimed that Earthmovers would be strictly liable to plaintiffs, and hence a "concurrently negligent tortfeasor" whose liability should not be passed on to Koehring. Koehring makes no assertion that

---

2. The accident is not at issue in this appeal.

3. The Fifth and Eighth Affirmative Defenses allege the superceding and intervening negligence of "other persons or parties." The parties against which these defenses are directed are Nenana and the operator of the crane.

4. Specifically Koehring argued that since Earthmovers and Koehring could be held jointly

and severally liable, the former for leasing a defective product that the latter manufactured, under the rule of *Vertecs Corp. v. Reichhold Chemicals, Inc.,* 661 P.2d 619 (Alaska 1983), both were "joint tortfeasors." As a joint tortfeasor, Earthmovers would be barred from obtaining indemnity from Koehring. Koehring misreads *Vertecs.* The claims Vertecs was defending were all fault based.

Earthmovers knew that the crane was defectively designed.[5]

It was following the filing of Koehring's Motion for Partial Summary Judgment that plaintiffs withdrew their negligence and failure to warn claims against both defendants and elected to proceed on only a strict product liability theory.

Earthmovers opposed Koehring's motion and cross-moved for summary judgment, noting that Koehring had never asserted by way of cross-claim or counterclaim against Earthmovers any negligence on the part of Earthmovers. It argued that Koehring misunderstood the law of pass-through indemnity, the manufacturer being the last person in the chain who could be looked to by a lessor, seller or other person in the distribution chain. There being no evidence of any alteration by Earthmovers, Koehring was liable in indemnity to Earthmovers, should the crane be found to have been defectively designed. Earthmovers requested that its right to indemnity be established.

In response, Koehring asserted that Earthmovers was strictly liable because a lessor has a duty to inspect and make safe products it leases out, and not to lease out a dangerous product. Specifically Koehring addressed this issue as follows:

> It would violate the spirit and underlying principles of Alaska product liability law and indemnity law to permit Earthmovers to sidestep and avoid all legal responsibility if the product it rented out *proves to be defective.*

(Emphasis added). It claimed that "This case simply does not concern an intermediary who is totally innocent in passing a product on to the consumer without knowledge of the alleged defect."

The trial court ruled that Koehring had not properly raised an affirmative defense. "Given the failure of pleading," it granted indemnity to Earthmovers.

In its motion for a new trial, Koehring argued that Earthmovers' conduct had been placed in issue in Koehring's motion

for summary judgment, and that Koehring should therefore be allowed to amend its pleadings accordingly. The trial court denied the motion to amend and the motion for a new trial. Koehring challenges these rulings.

The trial court's rulings on discovery and attorney's fees are also challenged. Earthmovers contends that the court inadequately sanctioned Koehring for what Earthmovers claims were discovery abuses. Earthmovers sought documents from Koehring relating to previous two-blocking accidents or accidents involving the same model crane as the crane involved in the accident. Koehring objected to the request. Earthmovers' motion to compel was granted with limitations, but Earthmovers claims Koehring failed to satisfy this order.

This discovery cycle was repeated four months later. Koehring again failed to produce the requested documents. Earthmovers then sought sanctions against Koehring. The trial court awarded costs and fees as sanctions. Earthmovers does not believe costs and fees are adequate sanctions for "the litany of transgressions on the part of Koehring." It argues that the trial court should have imposed "litigation ending sanctions."

With regard to attorney's fees, the trial court ordered that, in conjunction with Koehring's indemnification of Earthmovers, Koehring must pay Earthmovers' attorney's fees incurred after April 4, 1986. This was the day plaintiffs abandoned their negligence claims and failure to warn. Earthmovers claims Koehring should pay all its attorney's fees.

## II. KOEHRING IS REQUIRED TO INDEMNIFY EARTHMOVERS FOR DAMAGES AWARDED AGAINST EARTHMOVERS UNDER STRICT PRODUCTS LIABILITY.

Whether Koehring was obligated to indemnify Earthmovers for the strict product liability judgment against it is a question of law. Therefore we may review

---

**5.** Koehring's problem is obvious: its principal defense to plaintiffs' claim, strenuously argued from the outset, was that the crane was not defectively designed.

the issue *de novo. Jackson v. White,* 556 P.2d 530, 533 n. 8 (Alaska 1976).

We were faced with a question of a manufacturer's indemnification of a distributor's attorney's fees for successfully defending a strict product liability suit in *Heritage v. Pioneer Brokerage & Sales, Inc.,* 604 P.2d 1059 (Alaska 1979). We held there that the manufacturer was required to indemnify the distributor for its attorney's fees. That case was limited to the issue of attorney's fees. We did not discuss indemnification for a damage award, because the distributor had prevailed. However, a general right to indemnification would seem to be axiomatic to a right to indemnification for attorney's fees.

We later discussed indemnity between two negligent tortfeasors in *Vertecs Corp. v. Reichhold Chemicals, Inc.,* 661 P.2d 619 (Alaska 1983). In *Vertecs* we held that in Alaska there is no non-contractual implied indemnity between two negligent tortfeasors. We based this holding on a number of considerations. First, we concluded that the indemnity doctrine was founded on principles of justice and fairness. Second, we weighed the advantages of indemnity between two negligent tortfeasors (fairness, the loss falling on the most culpable party, and spreading losses) against the disadvantages (vagueness of judicial standards, discouraging settlement, and judicial inefficiency derived from the difficult standards). Third, we took notice of Alaska's adoption of the Uniform Contribution Act, AS 09.16.010–.060. The presence of the Uniform Contribution Act, and thus the existence of a legislative scheme for distributing judgment costs fairly among negligent tortfeasors, was an important factor influencing us to decide against implied indemnity.

In *Ross Laboratories v. Theis,* 725 P.2d 1076 (Alaska 1986), we compared the indemnity doctrines articulated in *Vertecs* and *Heritage:*

The general rule is that a retailer who is liable on a theory of strict liability may obtain indemnity from the manufacturer, provided the retailer was not negligent. On the other hand, if the retailer and manufacturer are concurrently negligent, no claim for indemnity will lie. *Id.* at 1081 (citations omitted).

These rules are consistent with their respective legal theories. On the one hand, negligence is based on fault. Thus, no indemnity will lie between two negligent tortfeasors; they each must pay their own portion of the plaintiff's damages according to the contribution statute.

On the other hand, strict liability is not based on fault. This court has written: "The concept of risk allocation has been the primary policy rationale convincing courts to adopt strict products liability." *Caterpillar Tractor Co. v. Beck,* 593 P.2d 871, 877 (Alaska 1979) (footnote omitted). Other considerations include the greater efficiency achieved by eliminating plaintiff's need to prove fault and the incentive for manufacturers to provide safer products.[6] *Id.*

Thus, once the balancing of fault has been removed as a policy consideration and risk and cost allocation have been substituted for it, any apparent dichotomy in the indemnity doctrine is explained. It is the manufacturer who can best bear the cost of defective products and distribute that cost most equitably throughout society. The manufacturer indemnifies not because of its culpability, but because of its position at the head of the product distribution chain. In addition, we can perceive no difference between a retailer and a lessor for these purposes.

Koehring argues, based on *Vertecs,* that Earthmovers is not entitled to indemnity. But neither Koehring nor Earthmovers was found negligent. Thus *Vertecs,* which applies to two negligent tortfeasors, is inapplicable. The rule assumed in *Heritage*

---

**6.** Professor Prosser lists three justifications for strict product liability: the costs can best be borne and distributed throughout society by the manufacturer; manufacturers will be encouraged to develop safer products; and, manufac- turers' fault is often present but difficult to prove. W. Keeton, D. Dobbs, R. Keeton and D. Owen, *Prosser and Keeton on the Law of Torts* 692–93 (5th ed. 1984).

and discussed in *Ross* governs this case: a retailer or lessor found liable on a strict product liability theory may obtain indemnity from the manufacturer, provided the retailer or lessor was not independently negligent.[7]

### III. KOEHRING FAILED TO RAISE ANY ISSUE OF EARTHMOVERS' INDEPENDENT NEGLIGENCE.

Koehring complains that in ruling on its motion for a new trial, the trial court erred in not allowing it to amend its pleadings to state a defense of "assumption of risk"[8] on the part of Earthmovers. We have repeatedly held: "The grant or denial of a motion for a new trial is a matter of discretion with the trial court and will not be interfered with 'except in the most exceptional circumstances and to prevent a miscarriage of justice.'" *Exxon Corp. v. Alvey*, 690 P.2d 733, 741 (Alaska 1984) (quoting *International Bhd. of Teamsters, Local 959 v. King*, 572 P.2d 1168, 1178 (Alaska 1977) (quoting *National Bank of Alaska v. McHugh*, 416 P.2d 239, 244 (Alaska 1966))).

We have also held that a trial court has broad discretion in allowing or denying proposed amendments to pleadings. *Rutledge v. Alyeska Pipeline Serv. Co.*, 727 P.2d 1050, 1054 (Alaska 1986).

■ To avoid its indemnity obligation it would have been necessary for Koehring to prove Earthmovers' independent negligence. Koehring would then have fallen into the *Ross* exception to indemnity: "a retailer ... may obtain indemnity from the manufacturer, provided that the retailer was not negligent." *Ross Laboratories*, 725 P.2d at 1081.

Because negligence is a complete bar to indemnification, it is an affirmative defense under Civil Rule 8(c) and must be affirmatively pled. *Cf.*, Alaska R.Civ.P. 8(c); *Rollins v. Linbold*, 512 P.2d 937, 940 (Alaska 1973) ("An affirmative defense can generally be defined as a new matter not set forth in the complaint which constitutes a defense; or a new matter which, assuming the complaint to be true, is a defense to it.") However, Koehring did not plead Earthmovers' independent negligence.

We observe first that Koehring did not plead any negligence on the part of Earthmovers in response to Earthmovers' third-party complaint against it. It never filed an answer to Earthmovers' amended third party complaint.

In its briefing, Koehring makes statements which seem at first to suggest that Koehring has put Earthmovers conduct into contention, but which then address only a strict product liability theory of recovery. For example, in its Memorandum in Support of Motion for Partial Summary Judgment, Koehring pleads:

> In the present case, if the jury finds that Earthmovers' acts caused plaintiff's injuries, regardless of whether the underlying theory of liability is negligence or strict liability, Earthmovers should not be entitled to recover indemnity from

---

7. Koehring agrees that indemnity would attach if Earthmovers was an innocent party but argues that Earthmovers cannot be innocent because it was found strictly liable. Koehring quotes from *Allison Steel Mfg. Co. v. Superior Court*, 20 Ariz.App. 185, 511 P.2d 198 (1973) to support its argument that a finding of liability against Earthmovers under a strict liability theory implies fault on the part of Earthmovers. This quote is taken out of context. In fact, the case holding goes against Koehring because the quoted text is the court's attempt to justify its holding a manufacturer liable for all damages awarded in a product liability action. The text preceding the language quoted by Koehring is:

> It is true that the doctrine of strict or products liability imposes liability upon all of those in the chain of placing a product in the stream of commerce, from the retailer, to the whole-

saler, to the manufacturer of the product. *It is also true that the retailer of the product, absent active participation in the creation of the defects causing the injury, may seek indemnity from the manufacturer whose process created the defect....* We have found no case which would allow the manufacturer of a "defective product", as that term is used in products liability cases, to collect indemnity from a third party whose negligence may also have contributed to the consumer's injuries. *Id.*, 511 P.2d at 202–03 (citations omitted; emphasis added).

8. It is unclear just what "risk" Earthmovers arguably assumed, but apparently it is the risk of leasing a product later determined to be defective.

Koehring. It would be unjust to hold that a party that causes injury may be completely relieved of liability through implied indemnity simply because plaintiff's cause of action was for strict liability, rather than negligence.

This statement is a legal *non-sequitor;* if negligence is not an issue, then Earthmovers' conduct will not be presented to the jury. The only "acts" which are considered in a strict liability action are the "acts" of placing the defective product into the stream of commerce. *See Clary v. Fifth Ave. Chrysler Center, Inc.,* 454 P.2d 244, 247 (Alaska 1969).

Koehring clarified its position when, subsequent to the injured welders dropping their negligence claim, Koehring wrote in its Reply to Earthmovers' Memorandum Opposing Koehring's Motion for Partial Summary Judgment and Opposition to Earthmovers' Cross–Motion for Summary Judgment:

> In its Opposition, Earthmovers attempts to mischaracterize the theory of liability supporting Koehring's Motion for Summary Judgment. Koehring filed its Motion for Summary Judgment before it received notice that plaintiffs were dropping their negligence claims against Earthmovers and Koehring. As a result, there is some discussion in Koehring's Motion for Summary Judgment relating to Earthmovers' alleged negligence. However, the clear thrust of Koehring's argument in that motion is that Earthmovers is precluded from asserting a claim for indemnity against Koehring, regardless of plaintiffs' theory of liability, including strict liability.

> Under Alaska law, Earthmovers would be subject to strict liability for its own independent activity in leasing out a

crane which proves to be defective if the defective condition proximately caused plaintiffs' injuries. *Bachner v. Pearson,* 498 [479] P.2d 319 (Alaska 1970). *A significant portion of Earthmovers' Opposition is devoted to challenging the negligence issue raised in Koehring's Motion for Summary Judgment. Because Earthmovers' discussion on that point has been rendered moot by plaintiffs' decision to drop their negligence claims, and because Koehring's motion for Summary Judgment is based primarily on Earthmovers' potential strict liability as a commercial lessor, that discussion does not merit a response from Koehring.*

(Emphasis added).[9] Calling the negligence issue "moot" and writing that it "does not merit a response from Koehring" would seem to be dispositive. However, an ambiguity developed at oral argument on these motions. The following colloquy took place:

> The Court: No, I'm relying on a general indemnity provision. Basically Earth Movers is—has claimed—had pled indemnity. A corollary of indemnity under several lines of authority is that—that the—whatever the intermediary, whether it be retailer or lessor, is entitled to indemnity except to the extent that it has assumed the risk. I don't believe that that's a matter that needs to be put....

> . . . .

> [Earthmovers' Counsel]: Well, I'd just re—the Court then because what the Court is—is injecting into this case then is the question of conduct of Earth Movers, and....

> The Court: It had been my understanding from based on the summary

---

**9.** In *Bachner v. Pearson,* 479 P.2d 319 (Alaska 1970), this court extended application of strict product liability to commercial leases. 479 P.2d at 327–328. We also addressed whether contributory negligence by the user constituted a defense to a strict product liability claim, concluding that "contributory negligence, as a defense to strict liability in tort, should be limited to those cases where the plaintiff voluntarily and unreasonably encounters a known risk." *Id.* at 330. We upheld the trial court's action in strik-

ing a contributory negligence defense at the close of the defendant's case, since "there is absolutely nothing in the record from which a jury could conclude that Pearson actually knew of the defective condition of the muffler, yet proceeded to fly the plane.... Defendant's only recourse in attempting to establish plaintiff's contributory negligence as a defense to strict liability would have been to prove that Pearson knew of the defect in the exhaust system." *Id.*

judgment motions that that had already been injected into this case.

(Earthmovers' Counsel]: It'd only been injected by the plaintiffs. That's why when the plaintiffs dismissed the negligence claim, Koehring came back and said that that's not a matter that needs to be discussed any more because of the absence of negligence claims. There has never been any claim asserted against Earth Movers by Koehring based upon conduct or based upon comparative negligence. That's a matter of—of affirmative pleading if it even were the stated cause of action, but the Court's—if the Court is saying that that is something that can be set up, I don't think it can be set up in this trial. I think that they have not pled that. We're talking about really complicating this case at this moment if we bring Earth Movers' conduct into question.

. . . .

The Court: Mr. Peterson or Mr. Thorsness [Koehring's Counsel]?

Unidentified Voice: I guess I'm a little bit confused, too, as to exactly how we'll handle this as a matter of proof. I—I think we are in basic agreement that—between us and Earth Movers that the question is really a matter of law. Is a lessor entitled to indemnity to the same extent as a retailer might be or is a lessor in a separate category which as a matter of law cannot pass back to the manufacturer in a strict liability case. This matter of assumption of the risk or assumption of the defect, maybe I can articulate the way I would assume that that would be handled.

In other words, Koehring would have to prove then that Earth Movers knew more about the dangers, knew more about the product, or knew more about anti-two-blocking devices than the typical theoretical lessor. Is—is that what is meant by the Court when you're talking about Earth Movers' assumption of the risk? In other words, that they knew what the risk was and then assumed the risk, stepping into the shoes or closer to the shoes of the manufacturer.

The Court: What the line of cases that talks about assumption of risks, talks about it—is virtually identical to what our Supreme Court talks about in terms of comparative fault in the Code (ph) One (ph).[10] That's what I'm talking about. Does that clarify what you're....

. . . .

---

10. We interpret the phonetic "Code (ph) One (ph)." to refer to *Butaud v. Suburban Marine & Sporting Goods, Inc.*, 543 P.2d 209 (Alaska 1975), commonly referred to as *Butaud I*. In *Butaud I* we elaborated on the contributory negligence defense to a strict product liability claim articulated in *Bachner*, 479 P.2d at 328 (user must be actually aware of the product's defect and voluntarily and unreasonably encounter that known risk), and refined the proof required to establish a strict product liability claim.

In *Butaud v. Suburban Marine & Sporting Goods, Inc.*, 555 P.2d 42 (Alaska 1976), (*Butaud II*), we harmonized the doctrine of comparative negligence with strict product liability, and extended defense against strict liability to include a user's misuse of the product which proximately causes the injury.

*Bachner*, *Butaud I* and *Butaud II* were followed by *Caterpillar Tractor Co. v. Beck*, 593 P.2d 871 (Alaska 1979), which further defined the law of strict product liability. In defense of the action, Caterpillar asserted that "Beck perceived (or should have perceived) the danger of operating the loader without a ROPS and was himself negligent in failing to install a ROPS." *Id.* at 890. We rejected this defense:

We do not believe that a consumer who uses a product as it was intended to be used, and who knows or should know of the lack of a safety device, can be deemed to have misused the product within the meaning of *Butaud II*. If the jury finds that a product is defective by virtue of its lack of a safety feature, plaintiff's failure to install such a device will not reduce his recovery based upon his mere knowledge of the inadequate safety features on the product. This is not to say that a manufacturer of such a product has no defense. Rather, as was instructed here, the standard of *Butaud I* would apply.

*Id.* at 890–891. We concluded that "comparative negligence cannot be used when the plaintiff's negligence was nothing more than knowledge of the defect./63" *Id.* at 892. Note 63 reads:

This is especially true where there is a large used equipment market. The buyer in that market is even less likely to have the data on the dangers of operating without ROPS and the means to forestall such danger.

*Id.*

The Court: What's your position as to whether or not you needed to plead that?

Unidentified Voice: Well, I think it would be pled as a matter of a general denial on the indemnity claim. I'll have to take a look specifically at our pleading on that issue 'cause I do think that we have raised general defenses of superceding and intervening cause, comparative negligence or negligence of other parties, and I think within the context of the strict liability and indemnity issues that that may well be preserved by those pleadings if we're talking....

The Court: Take a look at it now.

Unidentified Voice: All right.

. . . .

The Court: I don't find an answer to the third-party complaint in my file.

Unidentified Voice: There is an answer, but there are no affirmative pleadings.

. . . .

The Court: ... Okay. The affirmative defenses pled are that negligence of the plaintiff and/or operator of the crane—and the operator was a city employee, correct?

Unidentified Voice: Yes.

The Court: That plaintiff was guilty of comparative fault and that plaintiff was using the crane in violation of law and regulations, negligent per se.

Given the failure of pleading, I'll grant Earth Movers' summary judgment motion on the issue of liability pass through (ph) idemnity....

. . . .

Unidentified Voice: Yeah, if I could just comment briefly for the record. I—I do feel that—and I will double check specifically on our pleading and provide the Court with a copy of that later today, but to the extent that the ruling really revolves around the issue of Earth Movers' assumption of the risk affecting their ability to seek indemnity, I think the affirmative defenses and the denial we have made are sufficient and—and that a specific pleading would not be necessary on that.

The ambiguity that developed in Koehring's oral colloquy with the court is not present in its pleadings. Given Koehring's pleadings and memoranda, the trial court could reasonably conclude that Koehring never raised an issue of Earthmovers' independent negligence.[11]

Following this exchange in court and the court's ruling Koehring made no motion for the court to reconsider, nor apparently did it present more specific pleadings to the court "later today." It did not at that time move to amend its pleadings to cure any defect. Instead, in its motion for a new trial Koehring moved to amend its pleadings to "conform with the uncontradicted evidence" presented in its summary judgment papers, again asserting that Earthmovers was liable under *Bachner v. Pearson*, 479 P.2d 319 (Alaska 1970).

As Koehring points out, pleadings normally can be freely amended to conform to the evidence. Alaska R.Civ.P. 15(b). The restrictions of Rule 8(c) are the exception, not the norm. *See* 3 J. Moore, *Moore's Federal Practice* ¶ 15.13(2) at 15–125 (2d ed. 1985) ("The fact that a defense, even an affirmative defense, has not been formally pleaded is immaterial if the issue was tried by express or implied consent.") However, the trial court had bases for refusing to allow Koehring to amend its pleadings as requested in its motion for a new trial. First, the injured plaintiffs had clearly pled that Earthmovers was negligent, but elect-

---

**11.** Prior to this ruling, Koehring had submitted three proposed instructions directed to Earthmovers' liability. The first asserted that the jury could not award indemnity to Earthmovers "if you find Earthmovers was a commercial lessor and that the product was defective." The second claimed that Koehring "has raised the affirmative defense that Earthmovers ... was negligent in renting the ... crane to ... Nenana without taking measures to insure that the crane would not be used to lift personnel." It then directed the jury how to proceed to deter-

mine whether design was a proximate cause in light of such negligence. Lastly, the court instructed the jury that a commercial lessor could be held strictly liable if it rented a defectively designed product, and that defect caused the plaintiff's injuries.

The first proposed instruction is an incorrect statement of the law. The second is directed to an issue not raised in any of Koehring's pleadings or memoranda. The last is a correct statement of *Bachner*, but not disputed by Earthmovers.

ed not to proceed on that claim prior to trial. At that point Koehring could have advised the court and parties that it would present a negligence claim itself, if that was its intention, to defend against Earthmovers' indemnity claim. Instead, it called its own argument on the issue of negligence "moot." Second, when questioned by the court, Koehring described the conflict between itself and Earthmovers as "a matter of law"; Koehring asserted that unlike a retailer, a commercial lessor is not entitled to indemnification from the manufacturer of a defectively designed product. Even though Koehring was incorrect, the trial court was entitled to rely on Koehring's representation as to the issue presented. Third, after the court's ruling on indemnity, but before trial, Koehring did not seek to have that ruling reconsidered or to amend its pleadings. It was only after trial that Koehring sought to amend its pleadings. The amendment relied on arguments presented in the pleadings prior to trial, not evidence admitted during trial. Critically, Koehring never asserted in those arguments that Earthmovers leased a product knowing it to be defective.

We agree with the trial court that Koehring did not raise the issue of independent negligence of Earthmovers as an affirmative defense, in pleading or memoranda, if it ever so intended. For the reasons above stated, the trial court did not abuse its discretion in refusing to allow Koehring belatedly to amend its pleadings. Thus, it follows that the trial court did not abuse its discretion in denying the motion for a new trial.[12]

IV. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY AWARDING ONLY COSTS AS SANCTIONS AGAINST KOEHRING FOR ITS DISCOVERY ABUSES.

■ Earthmovers sought discovery of complaints and warranty claims relating to anti-two-blocking devices and reports of two-blocking accidents. Koehring initially responded by requesting limits on the age of the documents sought and more time to compile the documents. Koehring claimed it needed more time because its files were not arranged for convenient retrieval of the information requested. It is clear that after the court modified the order compelling discovery Koehring still failed to satisfy Earthmovers' requests. Earthmovers then sought and received a second order compelling discovery. This order was almost identical to the first. Koehring still failed to produce all the documents requested by Earthmovers.

In response to Koehring's delays, Earthmovers argued that it was prejudiced by Koehring's tactics because it could not conclusively show that only a limited number of two-blocking accidents had occurred. The court offered a continuance which the parties rejected. The court then ordered costs as sanctions saying: "in making the punishment fit the crime, I do not feel that Koehring's sins justify litigation ending sanctions."

To impose sanctions under Alaska R.Civ. P. 37, the trial court must find a willful violation of a court order. *Hawes Firearms Co. v. Edwards*, 634 P.2d 377, 378 (Alaska 1981). Koehring's repeated failure to provide the requested documents, even after the trial court modified its order to compel, justifies the trial court finding Koehring's actions willful. But we have established no specific standard requiring trial courts to elevate the sanction from costs to issue preclusion. We have only stated minimum criteria that must be met when a court imposes issue preclusion. *See e.g., Hazen v. Municipality of Anchorage*, 718 P.2d 456, 460–61 (Alaska 1986) (issue established or claims dismissed must be relevant to the information requested);

---

**12.** The context in which the motion for a new trial was determined is relevant to our review of the trial court's decision. At that point, Koehring had not settled with the original plaintiffs, and hence was asking the trial court to order a new trial on all issues as to all parties: "The granting of indemnity was clearly in error. Accordingly, to the extent that the granting of indemnity affected the position of the parties at trial and skewed the evidence presented at trial, a new trial on all issues must be granted."

*Ketchikan Cold Storage Co. v. State*, 491 P.2d 143, 147 (Alaska 1971) (establishment-preclusion order should be employed only upon the clearest showing that such a course is required); *Bachner v. Pearson*, 432 P.2d 525, 528 (Alaska 1967) (issue preclusion appropriate where party was recalcitrant and did not in good faith attempt to comply with discovery order). Given these standards, and the trial court's extensive consideration of the issue evidenced in the record, we do not conclude that the trial court abused its discretion in not imposing upon Koehring the most extreme sanctions available to it.[13]

## V. THE TRIAL COURT DID NOT ERR BY AWARDING ATTORNEY'S FEES ONLY FROM THE DATE EARTHMOVERS NO LONGER DEFENDED A NEGLIGENCE ACTION.

██ It is well established that in civil cases, an award of attorney's fees to the prevailing party lies within the sound discretion of the trial court under Alaska R.Civ.P. 82. *Chugach Electric Assoc'n v. Northern Corp.*, 562 P.2d 1053, 1063 (Alaska 1977); *Haskins v. Sheldon*, 558 P.2d 487, 495 (Alaska 1976). The case at hand presents a unique circumstance, however, because Earthmovers is entitled to attorney's fees because of its right to indemnity. The review of the award of attorney's fees based on indemnity is a question of law which we may review *de novo*. *See Heritage v. Pioneer Brokerage & Sales, Inc.*, 604 P.2d 1065–67.

Koehring's obligation to indemnify Earthmovers includes attorney's fees. *Heritage*, 604 P.2d at 1066–67; *see also* Part II. A., *supra*. In the instant case the plaintiffs originally sought relief against Earthmovers on both negligence and strict products liability theories. A finding of negligence would have barred indemnity. A finding of no negligence on Earthmovers' part would have resulted in indemnity. Plaintiffs, however, elected to with-

draw their negligence claims and proceeded to trial only on the issue of strict products liability. It is appropriate to place the cost of defending the negligence action on Earthmovers, as the trial court has done, because had the case proceeded only on negligence, Koehring might have incurred no obligation to indemnify. Therefore, by setting April 4, the date plaintiffs abandoned their negligence claims, as the date after which Earthmovers no longer defended a negligence claim, the trial court adopted a reasonable means of apportioning costs consistent with Koehring's obligation to indemnify.

## VI. CONCLUSION.

For the reasons discussed above, the decision of the trial court is AFFIRMED.

MATTHEWS, Chief Justice, joined by RABINOWITZ, Justice, dissenting.

In my view the trial court erred in granting Earthmovers' cross-motion for summary judgment against Koehring for indemnity. This motion was granted because Koehring had not pled as an affirmative defense that Earthmovers was negligent with respect to the crane. Koehring had, however, moved for summary judgment on the indemnity claim on the basis of Earthmovers' negligence. Koehring stated in its memorandum in support of motion for partial summary judgment, filed April 4, 1986:

The policy underlying the rule that concurrently negligent tortfeasors may not assert claims for implied indemnity is applicable to the circumstances of the present case regardless of the theory underlying Earthmovers' liability to plaintiffs.... In this case, Earthmovers is not an innocent conduit. Without a contract, indemnity is only appropriate where there is no personal fault, concurrent wrongdoing or responsibility on the part of the party seeking indemnity. Earthmovers placed the accident crane on the market with full knowledge that

---

**13.** The standard of review for discovery sanctions is abuse of discretion. *See Hazen v. Mu-* *nicipality of Anchorage*, 718 P.2d at 460.

there was no anti-two-block device attached to it. Earthmovers could have attached such a device to the crane, but it chose not to do so.... In the present case, if the jury finds that Earthmovers' acts caused plaintiff's injuries, regardless of whether the underlying theory of liability is negligence or strict liability, Earthmovers should not be entitled to recover indemnity from Koehring. It would be unjust to hold that a party that causes injury may be completely relieved of liability through implied indemnity simply because plaintiff's cause of action was for strict liability, rather than negligence.

(Citation omitted).

Similarly, Koehring, in its trial brief, filed after the plaintiffs had limited their claims against Koehring and Earthmovers to strict liability claims, nonetheless identified as a primary issue in the case the "intervening/superseding negligence ... of Earthmovers."

Further, Koehring, in its Reply to Earthmovers' Memorandum Opposing Koehring's Motion for Partial Summary Judgment and Opposition to Earthmovers' Cross-motion for Summary Judgment, continued to argue that Earthmovers' fault barred its claim for indemnity. Koehring stated in part in this memo, filed the same day as its trial brief:

> Earthmovers was aware of the potential dangers presented by two blocking. Indeed, Earthmovers' personnel were aware of a two-blocking accident involving another Earthmovers' employee that occurred two years prior to the accident involved in this case. Earthmovers purchased a used crane for its own use and for commercial leasing. It rented it out and took it back in. It maintained the crane. This case simply does not concern an intermediary who is totally innocent in passing a product on to the consumer without knowledge of the alleged defect.

(Citation omitted). Koehring took pains to distinguish cases cited by Earthmovers involving faultless retailers who were able to obtain indemnity from manufacturers from the present case because Earthmovers was at fault:

> *Heritage* [*v. Pioneer Brokerage & Sales, Inc.*, 604 P.2d 1059 (Alaska 1979)] does not stand for the proposition that a lessor of a product may obtain indemnity against the manufacturer of the product when the lessor (1) thoroughly inspects the product prior to rental, (2) is aware of an allegedly defective condition in the product prior to rental, (3) has the opportunity and legal responsibility to correct the alleged defect prior to rental, and (4) is held strictly liable to plaintiffs whose injuries are caused by the alleged defect....
>
> ....
>
> In the present case, Earthmovers knew about the potential dangers presented by two-blocking. It knew that the accident crane lacked an operational anti-two-block device well in advance of its rental of the crane to the City of Nenana. The facts of the present case are not like those of *Sequoia* [*Manufacturing Co. v. Halec Constr. Co.*, 117 Ariz. 11, 570 P.2d 782 (App.1977)].

Koehring in this memorandum also refers to Earthmovers' opposition to Koehring's motion for summary judgment. Koehring states:

> A significant portion of Earthmovers' Opposition is devoted to challenging the negligence issue raised in Koehring's Motion for Summary Judgment. Because Earthmovers' discussion on that point has been rendered moot by plaintiffs' decision to drop their negligence claims, and because Koehring's Motion for Summary Judgment is based primarily on Earthmovers' potential strict liability as a commercial lessor, that discussion does not merit a response....

While this is a paradoxical statement, it is made only with reference to Koehring's motion for summary judgment, not to Earthmovers'. Further, regardless of the meaning of the mootness statement, it is not possible to read the memorandum as a whole as demonstrating an intention to relinquish the defense that Earthmovers is

not entitled to indemnity because of its fault with respect to the crane.

Although the defense of Earthmovers' negligence should have been raised as an affirmative defense under Civil Rule 8(c) in Koehring's answer, it was permissible to present it in a motion for summary judgment. A leading commentator states, concerning the parallel federal rule:

> While some cases hold that an affirmative defense not raised in the answer is waived and, therefore, not available as a basis for a summary judgment motion, other holdings provide that, absent prejudice to plaintiff, an affirmative defense may be raised by a motion for summary judgment regardless of whether it was pleaded in the answer or not. The latter position is more in keeping with the general purpose of the federal rules to avoid decisions based on pleading technicalities rather than the merits of a case.

2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 8.28, at 8–207–208 (2d. ed. 1986).

Once the negligence defense was raised by the motion for summary judgment it seems to me that the court should have deemed Koehring's answer amended to conform to the motion.[1] There was no surprise nor lack of opportunity to meet the issue, as Earthmovers knew from the outset that it had to defend against a claim that it had been negligent.

In all other respects I agree with the majority opinion.

---

1. *See Sears, Sucsy and Co. v. Insurance Company of North America,* 396 F.Supp. 820, 823, n. 5 (N.D.Ill.1975) ("Release and accord and satisfaction is an affirmative defense that must be pleaded. In the circumstances of this case, however, since no prejudice resulted to the plaintiff by the failure to so plead, the court will deem the pleadings to be amended to conform to the materials submitted." (citation omitted)); *Rivera v. Anaya,* 726 F.2d 564, 566 (9th Cir. 1984); *McKinley v. Bendix Corp.,* 420 F.Supp. 1001, 1002 (W.D.Mo.1976).